STUART G. GROSS (#251019)
sgross@grosskleinlaw.com
GEORGE A. CROTON (#323766)
gcroton@grosskleinlaw.com
**GROSS & KLEIN LLP**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
t (415) 671-4628
f (415) 480-6688

*Attorneys for Applicant Nancy Jean Adams*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **In re APPLICATION OF NANCY JEAN ADAMS for issuance of subpoena under 28 U.S.C. § 1782** | Case No.<br><br>**DECLARATION OF IAN LITEROVICH IN SUPPORT OF EX PARTE APPLICATION OF NANCY JEAN ADAMS FOR AN ORDER PURSUANT TO 28 USC § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY** |

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

## DECLARATION OF IAN LITEROVICH

I, IAN LITEROVICH, declare under penalty of perjury under the laws of the United States of America as follows:

1.      I am an attorney admitted to practice law in the Province of Ontario, Canada, and a lawyer at the Ontario-based law firm Morganti & Co., P.C.

2.      Morganti & Co., P.C. is co-counsel[1] to Nancy Jean Adams (hereinafter, "Applicant") in connection with the antitrust class proceeding styled *Adams v. Apple Inc. et al.*, Court File Number CV-12-17511-00CP and the further antitrust class proceeding with the same style, Court File No. CV-16-24156-00CP, both pending in the Ontario Superior Court of Justice, Southwest Region (collectively, the "Canadian Class Actions"). A copy of the Statements of Claim in the Canadian Class Actions are attached hereto as **Exhibit "A".**

**Overview of This Application**

3.      The defendants in the Canadian Class Actions are Apple, Inc. ("Apple") and certain publishers of eBooks, namely Hachette Book Group Canada Ltd., Hachette Book Group, Inc., HarperCollins Canada Limited, HarperCollins Publishers L.L.C.; MacMillan Publishers, Inc., Penguin Group (USA) LLC (formerly Penguin Group (USA), Inc.), Penguin Canada Books, Inc., and Simon & Schuster Canada, a division of CBS Canada Holdings Co.

4.      The Canadian Class Actions have been brought on behalf of all persons in Canada who purchased certain eBooks sold under an allegedly improper pricing model by the above-noted publishers between April 1, 2010 to September 21, 2014 (the first action) and September 22, 2014 to March 10, 2017 (the second action).

5.      The first action was settled without admission of liability as against all defendants other than Apple in the settlement agreement made as of May 8, 2014 and approved by court order on October 6, 2014 (the "Publishers Settlement Agreement"). The funds proffered under the Publishers Settlement Agreement were retained pending trial or resolution of the action against Apple Inc.

---

[1] Alongside the Canadian law firms of Branch McMaster LLP, Strosberg Sasso Sutts, LLP, and Sylvestre Painchaud et Associés s.e.n.c.r.l.

6.     The Canadian Class Actions have now settled in their entirety pursuant to a settlement agreement reached with Apple made as of November 14, 2018, as amended (the "Apple Settlement Agreement").  The Apple Settlement Agreement currently remains subject to Court approval at this time.  A copy of the Apple Settlement Agreement is attached hereto as **Exhibit "B"** along with the attendant Addendum.

7.     Collectively the Publishers Settlement Agreement and the Apple Settlement Agreement will hereinafter be referred to as the "Settlement Agreements".  The Apple Settlement Agreement includes a Distribution Protocol which provides for the distribution of the settlement proceeds from both Settlement Agreements.

8.     Applicant brings this application to obtain information relevant to the Canadian Class Actions from Google LLC ("Google"), a non-party to the litigation in the Canadian Class Actions involved in selling internet services, software products, and electronics to consumers and businesses.

9.     Specifically, Google is in possession of information that would enable the settlement Claims Administrator to identify the Settlement Class Members so that their entitlements can be calculated and the proceeds of the settlement can be deposited directly to their Google accounts or transferred via etransfers to their emails associated with those accounts.  The information in the possession of Google, as such, would be necessary for the effective administration of the Settlement Agreements, as further elaborated below.

10.     The information being requested of Google is outlined in **Exhibit 1** to the Application.

11.     Further, Apple is taking no position on this application.

**The Information Being Sought from Google**

12.     The Canadian Class Actions allege that the defendants entered into an unlawful conspiracy to fix, maintain, increase or control the price at which eBooks were sold by them in Canada. In certain instances, those sales were conducted through non-parties.  For the purposes of the Apple Settlement Agreement, such non-parties are referred to as "eRetailers."

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

13.     At the relevant time between April 1, 2010 and March 10, 2017, Google sold eBooks to the Class Members, and as such is an eRetailer.

14.     Accordingly, Google is in possession of information regarding the Settlement Class Members, who purchased the Eligible eBooks during the relevant period.  For the purposes of the Apple Settlement Agreement, that information is referred to as "eRetailer Data."

15.     The eRetailer Data involves the identification of the relevant Settlement Class Members who purchased Eligible eBooks, the total number of Eligible eBooks purchased by each such Settlement Class Member, information as to whether the relevant Settlement Class Member's account remains active with the eRetailer, and the email address associated with the Settlement Class Member's account.[2]

16.     The Distribution Protocol and Notice Program (as defined in the Apple Settlement Agreement) are designed to permit identification of Settlement Class Members, calculation of their individual entitlements and provision of their entitlements directly without the need for an expensive claims process.

17.     In order for this to occur, the Claims Administrator requires the eRetailer Data, so that it will be able to sufficiently identify the Settlement Class Members, determine the amount of their individual entitlements and facilitate distribution of their settlement proceeds.

18.     Specifically, with the eRetailer Data available, the individual entitlements from the net proceeds of the settlement can be directly deposited into the relevant Settlement Class Member's account with the eRetailer.  Alternatively, the Claims Administrator can identify the eligible Settlement Class Member and send them their individual entitlements from the net proceeds of the settlement via e-transfer of funds to the email addresses identified in the eRetailer Data.

19.     In the event the eRetailer Data is not available from an eRetailer, a traditional and more expensive claims process (i.e. what is described in the Settlement as "Alternate Distribution") will be required (unless the Parties agree to and the Courts approve a cy pres distribution).

---

[2] Sections 2.1, 2.3, 2.5, 4.1(4)-(5), and 4.2(2)-(4) of the Apple Settlement Agreement

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

20. To date, several eRetailers have committed to provide the eRetailer Data. Specifically, Apple, Amazon and Kobo have committed to the protocol described above, and have generally followed it in a parallel proceeding styled *In re Electronic Books Antitrust Litigation* 12-cv-03394 brought in the United States Southern District of New York (hereinafter, "U.S. Proceeding") as detailed in:

    (a) the Declaration of Daniel Quinn for Apple dated October 20, 2014, attached hereto as **Exhibit "C";**

    (b) the Declaration of Charles S. Wright for Amazon dated October 29, 2014, attached hereto as **Exhibit "D"**; and

    (c) the Declaration of Kyosuke Murota for Kobo dated October 28, 2014, attached hereto as **Exhibit "E"**.

21. Google is the further eRetailer whose eRetailer Data would be necessary for the effective administration of the Settlement Agreements in accordance with the Distribution Protocol and Notice Program described above.

22. Google provided notice in the U.S. Proceeding to assist with the distribution procedure as reflected by the Declaration of Stella Loh dated October 9, 2014, Books Product Manager of Google filed in the U.S. Proceeding. Attached as **Exhibit "F"** is the Declaration of Stella Loh for Google.

23. On April 18, 2019, my firm and I began a dialogue with Google to discuss obtaining and providing the Claims Administrator with the eRetailer Data necessary to distribute the settlement proceeds to those Settlement Class Members who were Google customers.

24. In-house counsel at Google have advised that the requested eRetailer Data is available, but that there are technical difficulties in providing credits directly to Google customer accounts. As such, the appropriate method available for providing settlement fund entitlements to Google customers is to send e-transfers to the email accounts associated with Google accounts identified in the eRetailer Data. This e-transfer method is contemplated in the Apple Settlement Agreement and is described as "Direct Distribution".

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

25.     I am further advised by Google's in-house counsel that Google would be willing to provide the Google eRetailer Data for use in connection with the Canadian Class Actions only in response to a subpoena in order to alleviate any privacy concerns arising from sharing customer data.

26.     Applicant brings this Application under 28 U.S.C. § 1782, seeking to issue a document subpoena on Google.

27.     The information sought is the Google eRetailer Data, which is further outlined in **Exhibit 1** to the Application.  The eRetailer Data which is in Google's possession is not available to the Applicant from other sources.

28.     Apple, which is a party to the Apple Settlement Agreement which provides for the Distribution Protocol described, supports the within application in furtherance of an efficient and effective administration of the Settlement Agreements.

### *Receptivity of Ontario Courts*

29.     Google is not a party to the Canadian Class Actions and lives outside of the jurisdiction of the Ontario Courts.

30.     Applicant is unable to obtain the Google eRetailer Data through normal channels of discovery, although Ontario law provides procedures by way of which a "letter of request" can be sent to the judicial authorities of the jurisdiction in which a foreign witness is found requesting the issuance of such process as necessary to compel such person to depose.

31.     Ontario Courts generally welcome the assistance of the United States Courts, including with respect to discovery taken pursuant to 28 U.S.C. § 1782.

### *Other Matters*

32.     Google is domiciled within this district at 1600 Amphitheatre Parkway, Mountain View California.

/ / /

/ / /

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

1      33.    As a courtesy, Applicant's counsel will provide a copy of this application and

2 supporting declaration to Counsel for Apple, who supports this application, as well as to Google.

3

4      I declare under penalty of perjury under the laws of the United States of America that the

5 foregoing is true and correct.

6

7 Executed this  7th  day of January, 2021, at Toronto, Ontario, Canada.

8

9                             Ian Literovich

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

# Exhibit "A"

Court File No.:  CV-12-17511

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

B E T W E E N

NANCY JEAN ADAMS

Plaintiff

and

APPLE INC., HACHETTE BOOK GROUP CANADA LTD.,
HACHETTE BOOK GROUP, INC., HARPERCOLLINS CANADA LIMITED,
HARPERCOLLINS PUBLISHERS, INC., MACMILLAN PUBLISHERS, INC.,
PENGUIN GROUP (USA), INC., PEARSON CANADA INC.,
c.o.b. as PENGUIN GROUP (CANADA),
SIMON & SCHUSTER CANADA, INC. and SIMON & SCHUSTER, INC.

Defendants

Proceedings under the *Class Proceedings Act, 1992*

**STATEMENT OF CLAIM**
**(Notice of Action issued February 23, 2012)**

**DEFINED TERMS**

1.          The following definitions apply throughout this statement of claim:

(a)     "**Agency Model**" means the pricing structure whereby the **Defendant Publishers** set the price at which the **eBookstore Retailers** as their distribution agents may sell their **eBooks**;

(b)     "**Apple**" means Apple Inc.;

(c)     "*CJA*" means the *Courts of Justice Act*, R.S.O. 1990, c. C.43, as amended;

(d)     **"Class"** and **"Class Members"** means all persons in Canada who purchased **Defendant Publishers' eBooks** during the **Class Period**, except the **Excluded Persons** and those persons who are included in the **Quebec Action No. 500-06-000595-120**, or such other group as determined by the court;

(e)     **"Class Period"** means the period from and after April 1, 2010, or such other period as determined by the court;

(f)     **"CPA"** means the *Class Proceedings Act*, 1992, s.o. 1992, c.6;

(g)     **"Competition Act"** means the *Competition Act*, R.S.C. 1985, 19, (2nd Supp.), s. A.;

(h)     **"Defendants"** mean **Apple** and the **Defendant Publishers**;

(i)     **"Defendant Publishers"** mean all of the defendants named herein, except **Apple**;

(j)     **"eBooks"**  means a book in digital format which can be read on an **eReader** and, for greater certainty, includes iBooks;

(k)     **"eBookstore Retailers"** mean the distribution agents for **Defendant Publishers' eBooks**, such as **Apple**, Amazon.com, Barnes & Noble, and Kobo, Inc.;

(l)     **"eReader"** means a digital device including, for greater certainty, an iPad device onto which **eBooks** can be downloaded, stored and displayed;

(m)     **"Excluded Persons"** means the **Defendants** and any of their subsidiaries, affiliates, officers, directors, senior employees, legal representatives, heirs, predecessors, successors and assigns;

(n)     **"Overcharge"** means the difference between the prices paid by the **Class Members** for **Defendant Publishers' eBooks** during the **Class Period** and the prices which would have been paid by the **Class Members** for **Defendant Publishers' eBooks** during the **Class Period** in the absence of the conspiracy, agreement or arrangement alleged herein;

(o)     **"Plaintiff"** means Nancy Jean Adams; and

(p)     **"Quebec Action"** means the proceeding commenced in the Superior Court of Quebec as Court File No. 500-06-000595-120.

**THE RELIEF CLAIMED**

2.　　　　　　Plaintiff claims on her own behalf and on behalf of the other members of

the Class:

(a)　an order pursuant to the *CPA* certifying this action as a class proceeding and appointing her as the representative plaintiff;

(b)　a declaration that the Defendants conspired, agreed or arranged each with the other to fix, maintain, increase or control the prices charged for Defendant Publishers' eBooks in Canada during the Class Period;

(c)　special damages and general damages for conspiracy and conduct that is contrary to the *Competition Act* in the amount of $100 million or such other sum as this court finds appropriate at the trial of the common issues or at a reference or references;

(d)　punitive damages in the amount of $10 million or such other sum as this court finds appropriate at the trial of the common issues;

(e)　costs of investigation and prosecution of this action pursuant to s. 36(1) of the *Competition Act*;

(f)　costs of this action on a substantial indemnity basis or in an amount that provides full indemnity plus, the costs of distribution of an award under s. 24 or 25 of the *CPA*, including the costs of notice associated with the distribution and the fees payable to a person administering the distribution pursuant to s. 26(9) of the *CPA*;

(g)　prejudgment interest and postjudgment interest, compounded, or pursuant to ss. 128 and 129 of the *CJA*;

(h)　an order directing a reference or giving such other directions as may be necessary to determine issues not determined in the trial of the common issues; and

(i)　such further and other relief as to this Honourable Court seems just.

**THE NATURE OF THE ACTION**

3.         This class action concerns the unlawful and anti-competitive agreements among the Defendants to fix, maintain, increase or control the price at which the Defendant Publishers' eBooks would be sold over the internet in Canada and the North American market by their adoption of the Agency Model of distributing and controlling the price of eBooks during the Class Period.

4.         Plaintiff seeks to recover on her own behalf and on behalf of the Class the Overcharge paid for Defendant Publishers' eBooks after April 1, 2010 as a result of the Defendants' unlawful and anti-competitive conduct.

5.         eBooks are book length publications in digital form that can be read on a digital device or eReader.  Defendant Publishers sell eBooks through eBookstore Retailers over the internet.  Apple also manufactures and sells eReaders.

**PLAINTIFF**

6.         Plaintiff is a resident of the city of Windsor, Ontario.  During the Class Period, she purchased eBooks from the Defendant Publishers through Amazon.com for use on her Kindle brand eReader.

**DEFENDANTS**

7.          Apple manufactured and sold eReaders and distributed eBooks pursuant to the Agency Model throughout Canada and the United States during the Class Period. Apple is incorporated in the State of California and its principal office is located at 1 Infinite Loop, Cupertino, CA 95014.  It has multiple retail locations in Ontario and Quebec and distributes eReaders and eBooks over the internet.

8.          Hachette Book Group, Inc., a division of Lagardere SCA, published eBooks and distributed them pursuant to the Agency Model through Apple and other eBookstore Retailers throughout Canada and the United States during the Class Period. Hachette's principal office is located at 237 Park Ave., New York, NY 10017.

9.          Hachette Book Group Canada Ltd., a subsidiary of Hachette Book Group, Inc., published eBooks and distributed them pursuant to the Agency Model through Apple and other eBookstore Retailers throughout Canada and the United States during the Class Period.  Hachette Canada's principal office is located at 9001 Boulevard Del Acadie 1002, Montreal, QC H4N 3H5.

10.          HarperCollins Publishers Inc. published eBooks and distributed them pursuant to the Agency Model through Apple and other eBookstore Retailers throughout Canada and the United States during the Class Period.  Its principal office is located at 10 East 53rd Street, New York, NY 10022.

11.    HarperCollins Canada Limited, a subsidiary of HarperCollins Publishers Inc., published eBooks and distributed them pursuant to the Agency Model through Apple and other eBookstore Retailers throughout Canada and the United States during the Class Period.  Its principal office is located at 2 Bloor East, 20th Floor, Toronto, ON M4W 1A8.

12.    Penguin Group (USA) Inc., a subsidiary of Pearson PLC, published eBooks and distributed them pursuant to the Agency Model through Apple and other eBookstore Retailers throughout Canada and the United States during the Class Period. Its principal office is located at 375 Hudson Street, New York, NY 10014.

13.    Penguin Group (Canada), a subsidiary of Pearson PLC, published eBooks and distributed them pursuant to the Agency Model through Apple and other eBookstore Retailers throughout Canada and the United States during the Class Period.  Its principal office is located at 90 Eglinton Avenue East, Suite 700, Toronto, Ontario M4P 2Y3.

14.    MacMillan Publishers, Inc. published eBooks and distributed them pursuant to the Agency Model through Apple and other eBookstore Retailers throughout Canada and the United States during the Class Period.  Its principal North American office is located at 175 Fifth Avenue, New York, NY 10010.

15.    Simon & Schuster, Inc., a subsidiary of CBS Corp., published eBooks and distributed them pursuant to the Agency Model through Apple and other eBookstore Retailers throughout Canada and the United States during the Class Period.  Its principal office is located at 1230 Avenue of the Americas, 11th Floor, New York, N.Y. 10019.

16.        Simon & Schuster Canada Inc., a subsidiary of Simon & Schuster, Inc., published eBooks and distributed them pursuant to the Agency Model through Apple and other eBookstore Retailers throughout Canada and the United States during the Class Period.  Its principal office is located at 625 Cochrane Dr., Suite 600, Markham, ON L3R 9R9.

**JOINT AND SEVERAL LIABILITY**

17.        Plaintiff pleads that the Defendants are jointly and severally liable for each other's unlawful and anti-competitive conduct.

**THE EBOOK TRADE AND COMMERCE**

18.        The eBook market in North America is highly concentrated with the Defendant Publishers controlling a substantial majority of the market share of published bestseller and new release books and eBooks.

19.        Penguin group reports that its primary competitors are the HarperCollins group and the Hachette group.

20.        Prospective entrants to the eBook industry face substantial barriers, including start-up capital, intellectual property, recruitment and retention of established authors who create best seller books, capital to seek out and promote new writers, and relationships with distributors.

21.     Defendant Publishers distribute their eBooks in a continuous and uninterrupted flow of interprovincial and international commerce to customers through the internet.  Defendant Publishers are horizontal competitors of each other in North America.

22.     The distribution channel of eBooks in Canada is dominated by eBookstore Retailers such as Apple, Amazon.com, and Kobo, Inc..  Apple is a horizontal competitor to other eBookstore Retailers.

**RELEVANT PRODUCT GEOGRAPHIC MARKET**

23.     Consumers purchase eBooks from eBookstore Retailers anywhere in the World over the internet.

24.     Collectively Defendant Publishers enjoy a majority of the market share of bestseller new release eBooks.

25.     There is no reasonable substitute for eBooks.

26.     The Defendant Publishers are horizontal competitors in the publication of new release and best seller books and eBooks.

27.     The price of Defendant Publishers' eBooks is controlled by the Defendant Publishers.

**THE DEFENDANTS' UNLAWFUL AND ANTI-COMPETITIVE CONDUCT**

28.　　　　Prior to the spring of 2010 and before Apple marketed its eReader, the iPad, and eBooks, the Defendant Publishers sold their eBooks at wholesale prices to eBookstore Retailers who determined the retail price at which they would offer them for sale to the public, including Plaintiff and members of the Class.

29.　　　　On January 23, 2010, it was reported that Apple and the Defendant Publishers had entered an agreement to create the Agency Model for the distribution and sale of Defendant Publishers' eBooks by Apple.

30.　　　　Defendant Publishers also agreed with Apple to provide Apple the "most-favored-nation" pricing status among eBookstore Retailers.  This pricing status prohibits competing eBookstore Retailers from pricing any eBooks below Apple's pricing.

31.　　　　On January 27, 2010, Apple announced the launch of its iPad eReader.  Defendant Publishers allowed Apple to use their trademarks in connection with its announcement.

32.　　　　On January 28, 2010, Steve Jobs, the former CEO of Apple, was questioned why Apple would be using the Agency Model and pricing eBooks materially more than Amazon's pricing.  In response, Mr. Job's said, "*… that won't be the case… the prices will be the same… publishers will actually withhold books from Amazon…*"

33.        Commencing April 1, 2010, when Apple's iPad eReader was released to the public and Apple became a horizontal competitor to other eBookstore Retailers, and as Mr. Jobs had reported in January 2010, the Defendant Publishers applied the Agency Model to other eBookstore Retailers and eBookstore Retailers sell the Defendant Publishers' eBooks strictly as their agents.  Immediately, the price of Defendant Publishers' eBooks increased and there ceased to be price competition on their eBooks between eBookstore Retailers.

34.        As a result of the Agency Model and Apple's most-favoured nation price status, eBookstore Retailers are unable to compete for customers upon price and Plaintiff and members of the Class are forced to pay artificially high prices for eBooks published from the Defendant Publishers.

**THE CONSPIRACY**

35.        During the Class Period, senior executives and employees of the Defendants acting in their capacities as agents of the Defendants wrongfully and unlawfully conspired, agreed or arranged among themselves to fix, maintain, increase or control the price of Defendant Publishers' eBooks.

36.        In furtherance of the conspiracy, the following acts were done by the Defendants through their senior executives and employees during the Class Period:

   (a)    they agreed to, and did, fix, maintain, increase and control prices for
          Defendant Publishers' eBooks at artificially high levels;

(b)     they agreed to coordinate increases in the prices for Defendant
Publishers' eBooks with the advent and adoption of the Agency Model;

(c)     they agreed to coordinate increases in the prices for Defendant
Publishers' eBooks with the provision of most-favoured nation pricing
status to Apple;

(d)     they participated in meetings, conversations and communications to
discuss the prices of Defendant Publishers' eBooks and the competition
between Apple and other manufacturers of eReaders;

(e)     they agreed during such meetings, conversations and communications on
the amount to charge for Defendant Publishers' eBooks; and

(f)     they engaged in meetings, conversations and communications to monitor
and enforce the agreed-upon amounts to be charged for Defendant
Publishers' eBooks.

37.        The Canadian corporate subsidiaries Hachette Book Group Canada Ltd.,

HarperCollins Canada Limited, Penguin Group (Canada) and Simon & Schuster Canada,

Inc. participated in and furthered the objectives of the conspiracy by modifying their

competitive behaviour in accordance with instructions or directives received from their

respective American corporate parents Hachette Book Group, Inc., HarperCollins

Publishers Inc., Penguin Group (USA), Inc. and Simon & Schuster, Inc. and are liable

for their own acts.

38.        The acts particularized herein constitute a breach of Part VI of the

*Competition Act* and render the Defendants liable to pay the damages which resulted

pursuant to s. 36 of the *Competition Act*.

39.        Further, or alternatively, the acts particularized herein were unlawful acts

directed towards Plaintiff and other members of the Class which acts the Defendants

knew in the circumstances would likely cause injury to Plaintiff and the other members of the Class and the Defendants are liable for the tort of civil conspiracy.

**THE PLAINTIFF AND THE MEMBERS OF THE CLASS SUFFERED DAMAGES**

40.         Plaintiff and members of the Class have suffered damages as a result of the Defendants' unlawful and anti-competitive conduct which had the effect of raising, maintaining and stabilizing the Defendant Publishers' price of eBooks at artificially high rates because they paid inflated non-competitive prices for the Defendant Publishers' eBooks during the Class Period.

41.         During the Class Period, Plaintiff and members of the Class have directly or indirectly paid millions of dollars for eBooks.  By reason of the alleged violations of the *Competition Act* and the common law, Plaintiff and the other members of the Class paid more for Defendant Publishers' eBooks than they would have paid in the absence of the unlawful and anti-competitive conduct.  As a result, they have been injured and have suffered damages.

42.         Plaintiff asserts that some or all of her damages and those of the other members of the Class are capable of being quantified on an aggregate basis as the Overcharge between the amounts they actually paid for Defendant Publishers' eBooks purchased and the amounts which they would have paid in the absence of the Defendants' unlawful and anti-competitive conduct.

**PUNITIVE DAMAGES**

43.        Plaintiff pleads that the conduct of the Defendants was high-handed, outrageous, reckless, wanton, entirely without care, deliberate, callous, disgraceful, wilful and motivated solely by economic considerations.  Such conduct renders the Defendants liable to pay punitive damages.

**RELEVANT LEGISLATION**

44.        Plaintiff pleads and relies upon the *CJA*, *CPA* and sections 36, 45(1)(a) and 46 of the *Competition Act*.

**REAL AND SUBSTANTIAL CONNECTION WITH ONTARIO**

45.        Plaintiff pleads that this action has a real and substantial connection with Ontario because, among other things:

    (a)     some of the Defendant Publishers have business facilities in Ontario;

    (b)     some of the Defendant Publishers have employees that reside and work in Ontario;

    (c)     some of the Defendant Publishers are incorporated pursuant to the laws of Ontario;

    (d)     the Defendant Publishers sell eBooks to consumers in Ontario and derive substantial revenue from such sales;

    (e)     the Plaintiff's damages, and those of other members of the Class resident in Ontario, were sustained in Ontario; and

    (f)     some of the Defendants advertise their products in Ontario.

**PLACE OF TRIAL**

46.        Plaintiff proposes that this action be tried in the City of Windsor, in the

Province of Ontario.

**SERVICE**

47.        This originating process may be served without court order outside

Ontario in that the claim is:

 (a) in respect of a tort committed in Ontario (Rule 17.02(g));

 (b) in respect of damages sustained in Ontario arising from a tort wherever
   committed (Rule 17.02(h));

 (c) against a person outside Ontario who is a necessary or proper party to a
   proceeding properly brought against another person served in Ontario
   (Rule 17.02(o)); and

 (d) against a person carrying on business in Ontario (Rule 17.02(p)).

March 22, 2012

**Address of lead counsel and for
service of documents:**
SUTTS, STROSBERG LLP
Lawyers
600 – 251 Goyeau Street
Windsor, ON  N9A 6V4

HARVEY T. STROSBERG, Q.C.
LSUC #126400
HEATHER RUMBLE PETERSON
LSUC #24671V
JAY STROSBERG
LSUC #47288F

Tel:     519.561.6285
Fax:     519.561.6203

ANDREW J. MORGANTI
3230 Yonge Street
Suite 200A
Toronto, ON  M4N 3P6

ANDREW J. MORGANTI
LSUC #57895E

Tel:    416.800.2171
Fax:    416.800.2171

982908-v9

ADAMS

Plaintiff

v. APPLE INC., et al.

Defendants

Court File No. CV-12-17511

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

**PROCEEDINGS COMMENCED AT WINDSOR**

Proceeding under the *Class Proceedings Act, 1992*

**STATEMENT OF CLAIM**

**SUTTS, STROSBERG LLP**
Lawyers
600 – 251 Goyeau Street
Windsor, ON N9A 6V4

HARVEY T. STROSBERG, Q.C.
LSUC #: 126400
HEATHER RUMBLE PETERSON
LSUC #: 24671V
JAY STROSBERG
LSUC #: 47288F

Tel:      519.561.6285
Fax:    519.561.6208

**ANDREW J. MORGANTI**
3230 Yonge Street
Suite 200A
Toronto, ON M4N 3P8

ANDREW J. MORGANTI
LSUC #: 57895E

Tel:      416.800.2171
Fax:    416.800.2171

**LAWYERS FOR THE PLAINTIFF**
File:      29.059.000


MAR 2 2 2012

# Exhibit "B"

**CANADIAN EBOOK CLASS ACTION
NATIONAL SETTLEMENT AGREEMENT**


Made as of October 16, 2018

Between

**WAYNE VAN TASSEL, NANCY JEAN ADAMS and ANTOINE PONTBRIAND**

(collectively, the "Plaintiffs")

and

**Apple Inc and Apple Canada Inc**

(together, "Apple")

# TABLE OF CONTENTS

RECITALS ..................................................................................................................1

SECTION 1 – DEFINITIONS .......................................................................................4

SECTION 2 – SETTLEMENT APPROVAL ...............................................................15
    2.1   Best Efforts ..................................................................................................15
    2.2   Motions Certifying the National Proceeding, Authorizing the Quebec
    Proceeding, Approving Notice and Identification of Settlement Class Members..15
    2.3   Motion for eRetailer Data Order ..................................................................16
    2.4   Apple Data ..................................................................................................16
    2.5   Cooperating eRetailers ...............................................................................16
    2.6   Motions for Approval of Settlement ............................................................17
    2.7   Discontinuance Order ..................................................................................17

SECTION 3 – SETTLEMENT BENEFITS ..................................................................18
    3.1   Payment of Settlement Amount ...................................................................18
    3.2   Taxes and Interest ........................................................................................18

SECTION 4 – DISTRIBUTION PROTOCOL ..............................................................19
    4.1   General .........................................................................................................19
    4.2   Credit Distribution .......................................................................................21
    4.3   Direct Distribution .......................................................................................22
    4.4   Alternate Distribution ..................................................................................22
    4.5   Remaining Total Net Settlement Amount ....................................................23
    4.6   No Responsibility for Administration or Fees ..............................................24

SECTION 5 – OPTING-OUT ......................................................................................24
    5.1   Procedure ....................................................................................................24
    5.2   Opt-Out Report ............................................................................................25

SECTION 6 – RELEASES, DISMISSAL AND TRANSACTION HOMOLOGATION ...........25
    6.1   Release of Releasees ..................................................................................25
    6.2   No Further Claims .......................................................................................25
    6.3   Disposition of the Canadian Proceedings ...................................................26
    6.4   Claims Against Other Entities Reserved .....................................................26

SECTION 7 – EFFECT OF SETTLEMENT ...............................................................26
    7.1   No Admission of Liability .............................................................................26
    7.2   Agreement Not Evidence ............................................................................27
    7.3   No Further Litigation ....................................................................................27

SECTION 8 – CERTIFICATION OR AUTHORIZATION FOR SETTLEMENT ONLY .........28
    8.1   Settlement Classes and Common Issue ......................................................28
    8.2   Certification and Authorization Without Prejudice ........................................28

SECTION 9 – NOTICE TO NATIONAL SETTLEMENT CLASS .................................28
    9.1   Notice Required ..........................................................................................28
    9.2   Dissemination of Notices .............................................................................29

SECTION 10 – CLASS COUNSEL FEES AND ADMINISTRATION EXPENSES ................29

SECTION 11 – TERMINATION OF AGREEMENT .........................................................30
    11.1 Right of Termination ...........................................................................30
    11.2 If Agreement is Terminated................................................................31
    11.3 Allocation of Monies in the Trust Account Following Termination ................32
    11.4 Survival of Provisions After Termination...............................................32

SECTION 12 – MISCELLANEOUS ................................................................................32
    12.1 Releasees Have No Liability for Administration....................................32
    12.2 Motions for Directions .......................................................................32
    12.3 Headings, etc. .................................................................................33
    12.4 Computation of Time .........................................................................33
    12.5 Ongoing Jurisdiction.........................................................................33
    12.6 Governing Law.................................................................................34
    12.7 Entire Agreement.............................................................................34
    12.8 Amendments ...................................................................................34
    12.9 Binding Effect..................................................................................34
    12.10      Counterparts .....................................................................34
    12.11      Interpretation.....................................................................35
    12.12      Language..........................................................................35
    12.13      Transaction.......................................................................35
    12.14      Recitals............................................................................35
    12.15      Schedules.........................................................................36
    12.16      Notice..............................................................................36
    12.17      Acknowledgements .............................................................37
    12.18      Authorized Signatures .........................................................37
    12.19      Date of Execution...............................................................37

SCHEDULE A ...............................................................................................39

SCHEDULE B ...............................................................................................40

SCHEDULE C ...............................................................................................41

SCHEDULE D ...............................................................................................42

SCHEDULE E ...............................................................................................43

## CANADIAN EBOOK CLASS ACTION
## NATIONAL SETTLEMENT AGREEMENT

**RECITALS**

A.      WHEREAS the Plaintiffs have commenced the Canadian Proceedings in the Courts and allege that Apple participated in the Alleged Conspiracy, and the Plaintiffs claim class-wide damages as a result of the Alleged Conspiracy, as well as equitable relief;

B.      AND WHEREAS the Plaintiffs and the Defendant Publishers are parties to the Publishers' Settlement, which was approved by the Approval Courts. Apple was not a party to the Publishers' Settlement;

C.      AND WHEREAS at the time the Plaintiffs entered into the Publishers' Settlement, the Plaintiffs understood that the Defendant Publishers had or were about to enter into consent agreements with the Commissioner of Competition and that, as a result of those agreements, eRetailers who sold Defendant Publishers' eBooks were permitted to independently offer discounts on the sales of eBooks;

D.      AND WHEREAS the Plaintiffs take the position that the Publishers' Settlement was limited in scope to the sales of eBooks during the Original Class Period;

E.      AND WHEREAS after the approval of the Publishers' Settlement, Kobo launched a challenge to the consent agreements made as between some of the Defendant Publishers and the Commissioner of Competition concerning the same conduct. This challenge was ultimately successful on technical grounds, but the Commissioner of Competition was free to renegotiate the agreements with the Defendant Publishers;

F.      AND WHEREAS the Plaintiffs assert that the Defendant Publishers continued to prohibit retailers from independently offering discounts on the sales of eBooks after the end of the Original Class Period;

G.      AND WHEREAS on September 22, 2016, Nancy Jean Adams commenced the Second National Proceeding, CV-16-24156-00CP;

H.      AND WHEREAS Apple expressly denies that it has engaged in the Alleged
Conspiracy or other unlawful conduct and believes that it is not liable in respect of the
Alleged Conspiracy or at all, and believes it has good and reasonable defences in
respect of the claims advanced in the Canadian Proceedings;

I.      AND WHEREAS, despite its belief that it is not liable in respect of the Alleged
Conspiracy and that it has good and reasonable defences in respect of the claims
advanced in the Canadian Proceedings, Apple has negotiated and entered into this
Agreement to avoid the further expense, inconvenience, and burden of litigating the
Canadian Proceedings and any other present or future litigation arising out of the facts
that gave rise to them, to avoid the risks inherent in uncertain, complex and protracted
litigation and to achieve final resolutions of all claims asserted or which could have been
asserted against Apple, the Defendant Publishers, and the Releasees by the Plaintiffs
on their own behalf and on behalf of the Settlement Classes in relation to the Alleged
Conspiracy, as it relates to the sales of eBooks in Canada;

J.      AND WHEREAS counsel for Apple has engaged in extensive arm's-length
settlement discussions and negotiations with Class Counsel, including with the
assistance of an experienced mediator, the Honourable Warren Winkler, Q.C.;

K.      AND WHEREAS as a result of these settlement discussions and negotiations,
Apple and the Plaintiffs have entered into this Agreement, which embodies all of the
terms and conditions of the settlement between Apple and the Plaintiffs, both
individually and on behalf of the Settlement Classes;

L.      AND WHEREAS as part of this resolution, Apple has agreed to make a payment
in the Settlement Amount for the benefit of the Settlement Classes;

M.      AND WHEREAS as part of this resolution, Apple has confirmed that, on January
19, 2017, it entered into a consent agreement with the Commissioner of Competition
that has been registered with the Competition Tribunal and that Apple has implemented
that consent agreement;

N.      AND WHEREAS the Commissioner of Competition has also entered into similar consent agreements with the Defendant Publishers that have been registered with the Competition Tribunal;

O.      AND WHEREAS a challenge launched by Kobo in relation to some of the consent agreements was dismissed on February 1, 2018;

P.      AND WHEREAS the Plaintiffs and Apple have resolved the additional claims advanced against the Defendant Publishers in the Second National Proceeding and have agreed to include the Defendant Publishers as Releasees;

Q.      AND WHEREAS the Defendant Publishers have agreed in writing to waive any claim for costs, disbursements or taxes in respect of the Second National Proceeding as part of the Approval Orders;

R.      AND WHEREAS the Plaintiffs have agreed to accept this settlement because of the value of the Settlement Amount, as well as the attendant risks of litigation in light of the defences that would be asserted by Apple and the Defendant Publishers;

S.      AND WHEREAS the Plaintiffs and Class Counsel have reviewed and fully understand the terms of this Agreement and, based on their analyses of the facts and law applicable to the Plaintiffs' claims, and having regard to the proposed disposition of the Canadian Proceedings against Apple and the Defendant Publishers, the value of the Settlement Amount, the consent agreements that have been entered into by Apple and the Defendant Publishers, the risks associated with prosecuting the Canadian Proceedings, including the risks and uncertainties associated with trials and appeals, the Plaintiffs and Class Counsel have concluded that this Agreement is fair, reasonable and in the best interests of the Plaintiffs and the Settlement Classes;

T.      AND WHEREAS the Plaintiffs and the Settlement Classes intend to fully and completely settle and resolve the claims advanced in the Canadian Proceedings as against Apple and the other Releasees on the Effective Date pursuant to this Agreement;

U.      AND WHEREAS the Parties therefore wish to, and hereby do, finally resolve on a nation-wide basis, without admission of liability, the Canadian Proceedings as against Apple and the other Releasees;

V.      AND WHEREAS for the purposes of settlement only and contingent on approval of the Approval Courts as provided for in this Agreement, the Parties have consented to authorization of the Quebec Proceeding as a class proceeding and certification of the National Proceeding and the Second National Proceeding as national class proceedings as against Apple;

W.      AND WHEREAS for the purposes of settlement only and contingent on approval by the Approval Courts as provided for in this Agreement, the Parties have consented to the Approval Orders and the Discontinuance Order;

NOW THEREFORE, in consideration of the covenants, agreements and releases set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is agreed by the Parties that the Canadian Proceedings against Apple be settled and discontinued (in the case of the BC Proceeding), dismissed (in the case of the National Proceeding and the Second National Proceeding) and settled by way of homologated transaction (in the case of the Quebec Proceeding) with prejudice and without costs, subject to the approval of the Approval Courts, on the following terms and conditions:

## SECTION 1 – DEFINITIONS

For the purpose of this Agreement only, including the Recitals and Schedules hereto:

(1)     ***Active Account*** means an account used by a Settlement Class Member to purchase an Eligible eBook from Apple or from an eRetailer, and which account was used in the one-year period preceding the date when the eRetailer Data or Apple Data is compiled for the implementation of this Agreement;

(2)     ***Additional Class Period*** means the period of time extending from September 22, 2014 up to and including March 10, 2017;

(3)     ***Administration Expenses*** mean all fees, disbursements, expenses, costs, taxes and any other amounts incurred or payable by the Plaintiffs, Class Counsel, the Claims Administrator, or otherwise for the approval, implementation and operation of this Agreement, including but not limited to the costs of notices, translations, claims administration, distributions to Class Members, distributions to charitable organizations, obtaining any required approvals of one or more Approval Courts under this Agreement, any expenses or costs ordered to be paid to the Third Party eRetailers in connection with the eRetailer Data Order, taking any other steps required by one of more of the Approval Courts in order to implement this Agreement, taking any steps necessary to implement or required pursuant to the Distribution Protocol, and any amount owing to the Fonds d'aide aux recours collectifs of the Province of Quebec, but excluding Class Counsel Fees;

(4)     ***Agreement*** means this national settlement agreement, including the recitals and schedules;

(5)     ***Alleged Conspiracy*** means the alleged unlawful conspiracy by the Defendants, including Apple, to fix, maintain, increase or control the price of eBooks sold by them in Canada, contrary to Part VI of the *Competition Act,* the common law and the Civil Code of Quebec;

(6)     ***Alternate Distribution*** has the meaning set out in section 4.4 of the Agreement;

(7)     ***Amazon*** means Amazon.com, Inc. and any subsidiary or affiliate thereof that acted as a distribution agent for Defendant Publishers' eBooks in Canada;

(8)     ***Apple*** means Apple, Inc. and Apple Canada, Inc.;

(9)     ***Apple Data*** means the names and e-mail addresses of Settlement Class Members who purchased Eligible eBooks published by the Defendant Publishers from Apple during the Settlement Class Period, the total number of Eligible eBooks purchased by each Settlement Class Member from Apple

during the Settlement Class Period, and information as to which of the Settlement Class Members has an Active Account with iTunes;

(10)    ***Approval Courts*** mean the Ontario Court and the Quebec Court;

(11)    ***Approval Order*** means orders of the Ontario Court and Quebec Court in the forms attached as Schedule A approving this Agreement, declaring it to be binding upon all Settlement Class Members, dismissing the National Proceeding and the Second National Proceeding and homologating the transaction in the Quebec Proceeding against the Defendants, with prejudice and without costs;

(12)    ***BC Court*** means the Supreme Court of British Columbia;

(13)    ***BC Plaintiff*** means the plaintiff in the BC Proceeding;

(14)    ***BC Proceeding*** means the proceeding commenced by Wayne Van Tassel in the form of an action filed in the BC Court (Vancouver Registry), Court File No. S-122529, on April 5, 2012;

(15)    ***Canadian Proceedings*** mean the National Proceeding (CV-12-17511), the Second National Proceeding (CV-16-24156-CP), the Québec Proceeding (No. 500-06-000595-120) and the BC Proceeding (S-122529);

(16)    ***Certification and Authorization Orders*** mean the order of the Ontario Court in the form attached as Schedule B certifying the National Proceeding and Second National Proceeding as a national class proceeding and the judgment of the Quebec Court in the form attached as Schedule B authorizing the Quebec Proceeding as a class proceeding, in each case as against Apple, for the purpose of giving effect to and implementing this Agreement, and approving a Notice of Certification, Authorization and Settlement Approval Hearing;

(17)    ***Claims Administrator*** means a third party administrator proposed by Class Counsel and appointed by the Approval Courts to receive the Apple Data and eRetailer Data, assist with dissemination of Notices, receive the opt-out

requests and administer the Distribution Protocol, and any employees of such Person;

(18)   **Claims Period** means a period of time commencing 30 days after the last Approval Order is granted, and extending for 180 days thereafter;

(19)   **Class Counsel** means Branch MacMaster LLP, Strosberg Sasso Sutts LLP, Morganti & Co., P.C., and Sylvestre Painchaud et associés SENCRL;

(20)   **Class Counsel Fees** mean the fees, disbursements, costs, and all other applicable taxes or charges of Class Counsel, including without limitation any applicable GST, PST, HST or QST;

(21)   **Common Issue** means: Did Apple and the Defendant Publishers, or any of them, conspire with each other or others to fix, maintain, increase or control the price of eBooks in Canada during the Settlement Class Period;

(22)   **Cooperating eRetailer** means an eRetailer who has agreed to abide by the provisions of this Agreement relating to Cooperating eRetailers;

(23)   **Courts** mean the Ontario Court, the Québec Court and the BC Court;

(24)   **Credit Distribution** has the meaning set out in section 4.2 of the Agreement;

(25)   **Defendant(s)** means, individually or collectively, the individuals or entities now or in the future named as a defendant in the Canadian Proceedings;

(26)   **Defendant Publisher(s)** means, individually or collectively, Hachette, Harper Collins, Macmillan, Penguin, and Simon & Schuster;

(27)   **Direct Distribution** has the meaning set out in section 4.3 of the Agreement;

(28)   **Discontinuance Order** means the order made by the BC Court in the form attached as Schedule C discontinuing the BC Proceeding as against Apple with prejudice and without costs;

(29)   ***Distribution Protocol*** means the plan developed by the Parties, based on the terms set out in section 4 of this Agreement, for distributing the Total Net Settlement Amount to Settlement Class Members or for their benefit, as approved by the Approval Courts on notice to Apple and to the Publisher Defendants;

(30)   ***Document*** means any paper, computer or electronic record, or other material within the scope of Rule 1.03(1) and Rule 30.01(1) of the Ontario *Rules of Civil Procedure* and any copies, reproductions or summaries of the foregoing, including microfilm copies and computer images;

(31)   ***eBook(s)*** means an electronically formatted book in digital format designed to be read on a computer, a handheld device, or other electronic devices capable of visually displaying an electronically formatted book in digital format. For purposes of this Agreement, the term eBook does not include (1) an audio book, even if delivered and stored digitally; (2) a standalone specialized software application or "app" sold through an "app store" rather than through an eBook store (e.g., through Apple Inc.'s "App Store" rather than through "iBooks" or "iTunes") and not designed to be executed or read by or through a dedicated eBook reading device; or (3) a media file containing an electronically formatted book for which most of the value to consumers is derived from audio or video content contained in the file that is not included in the print version of the book;

(32)   ***eBook Monetary Benefit*** means the Total Net Settlement Amount divided by the number of Eligible eBooks;

(33)   ***Effective Date*** means the next calendar day after the day on which all appellate rights with respect to the Approval Orders and the Discontinuance Order have expired or the Approval Orders and the Discontinuance Order, as applicable, are affirmed upon a final disposition of all appeals;

(34)   ***Eligible eBooks*** means each and every eBook published by one or more of the Defendant Publishers that was purchased in Canada by a Settlement Class Member during the Settlement Class Period;

(35)   ***eRetailers*** means Amazon, Google, Kobo and Sony;

(36)   ***eRetailer Data*** means the names and e-mail addresses of Settlement Class Members who purchased Eligible eBooks published by the Defendant Publishers from the eRetailer during the Settlement Class Period, the total number of Eligible eBooks purchased by each Settlement Class Member from the eRetailer during the Settlement Class Period, and information as to which of the Settlement Class Members has an Active Account with the eRetailer.  In the case of Sony, the eRetailer Data will also include information showing whether or not the Settlement Class Members transferred their accounts to Kobo following the March 20, 2014 Sony Reader Store close-down;

(37)   ***eRetailer Data Order*** means the Orders of the Ontario Court requiring the eRetailers to provide the eRetailer Data to the Claims Administrator;

(38)   ***Excluded Person*** means the Defendants and any of their subsidiaries, affiliates, officers, directors, senior employees, legal representatives, heirs, predecessors, successors and assigns;

(39)   ***Google*** means Google, Inc. and any subsidiary or affiliate thereof that acted as a distribution agent for Defendant Publishers' eBooks in Canada;

(40)   ***Hachette*** means Hachette Book Group, Inc. and its wholly owned subsidiary Hachette Book Group Canada Ltd.;

(41)   ***HarperCollins*** means HarperCollins Publishers, LLC, and its wholly owned subsidiary HarperCollins Canada Limited;

(42)   ***Individual Monetary Benefit*** means the pro rata share of the Total Net Settlement Amount to which each Settlement Class Member is entitled to under this Agreement, being an amount of money equaling the eBook Monetary Benefit multiplied by the number of Eligible eBooks purchased by that Settlement Class Member during the Settlement Class Period, provided that the Individual Monetary Benefit may be increased proportionately as provided for in section 4.1(6) of this Agreement;

(43)   ***Kobo*** means Kobo, Inc. and Rakuten Kobo, Inc. and any subsidiary or affiliate thereof that acted as a distribution agent for Defendant Publishers' eBooks in Canada;

(44)   ***Macmillan*** means Macmillan Publishers, Inc.;

(45)   ***National Proceeding*** means the proceeding commenced by Nancy Jean Adams in the form of a Notice of Action filed in the Ontario Court (Windsor Registry), Court File No. CV-12-17511, on February 23, 2012;

(46)   ***National Settlement Class*** means all Persons in Canada who purchased Eligible eBooks during the Settlement Class Period, except the Excluded Persons, Persons who are included in the Quebec Settlement Class, and Persons who validly opt-out of the National Settlement Class in accordance with the certification order made in respect of Apple;

(47)   ***Net Settlement Amount*** means the amount remaining from the Settlement Amount plus any interest that accrues thereon after deduction of Class Counsel Fees, Administration Expenses, and any other amounts that may be approved by the Approval Courts;

(48)   ***Notice of Certification, Authorization and Settlement Approval Hearing*** means the form or forms of notice attached hereto as Schedule E, or such other form or forms as may be agreed to by the Plaintiffs and Apple and approved by the Approval Courts, which informs the Settlement Classes of: (i) the principal elements of this Agreement, including the procedure to be followed by the Settlement Class Members to prove their claims, (ii) the certification of the National Proceeding and Second National Proceeding as a national class proceeding and the authorization of the Quebec Proceeding as a class proceeding, each as against Apple, (iii) the dates and locations of the Settlement Approval Hearings, and (iv) the right to present arguments to the Approval Courts;

(49)   ***Notice of Distribution*** means any form or forms of notice as may be approved by the Approval Courts, which informs the Settlement Classes of the manner of

distribution of the Total Net Settlement Amount including any claims process by which Settlement Class Members may apply to obtain compensation from the Total Net Settlement Amount;

(50)  **Notices** mean the Notice of Certification, Authorization and Settlement Approval Hearings, the Notice of Distribution, and any other notice that may be issued pursuant to an order of the Approval Courts;

(51)  **Ontario Court** means the Ontario Superior Court of Justice;

(52)  **Ontario Plaintiff** means the plaintiff in the National Proceeding and the Second National Proceeding;

(53)  **Opt-Out Period** means the period of time commencing on the date on which the Notice of Certification, Authorization and Settlement Approval Hearing is first published and ending thirty (30) days thereafter, or such other date agreed upon by the Parties and ordered by the Approval Courts;

(54)  **Original Class Period** means the period of time extending from April 1, 2010 up to and including September 21, 2014;

(55)  **Penguin** means Penguin Group (USA) LLC (formerly Penguin Group (USA), Inc.) and Penguin Canada Books, Inc.;

(56)  **Parties** mean the Plaintiffs, the Settlement Class Members and Apple;

(57)  **Person** means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, joint venture, estate, legal representative, trust, trustee, executor, beneficiary, unincorporated association, government or any political subdivision or agency thereof, member, manager and any other business or legal entity and their heirs, predecessors, successors, representatives, or assignees;

(58)  **Plaintiffs** mean the plaintiffs in the Canadian Proceedings;

(59)   ***Publishers' Settlement*** means the settlement agreement dated May 8, 2014 made as between the Defendant Publishers and the Plaintiffs, which was approved as ordered on October 6, 2014;

(60)   ***Publishers' Net Settlement Amount*** means the amount remaining from the amounts paid by the Defendant Publishers pursuant to the Publishers' Settlement plus any interest that accrues thereon after deduction of Class Counsel Fees, Administration Expenses, and any other amounts that may be approved by the Approval Courts;

(61)   ***Quebec Court*** means the Superior Court of Quebec;

(62)   ***Quebec Plaintiff*** means the petitioner in the Quebec Proceeding;

(63)   ***Quebec Proceeding*** means the proceeding commenced by Antoine Pontbriand, in the form of an application for authorization (la Requête pour obtenir l'autorisation d'exercer un recours collectif) filed in the Quebec Superior Court, Court File No. 500-06-000595-120 (Montreal) on February 24, 2012;

(64)   ***Quebec Settlement Class*** means all individuals resident in Quebec and all legal Persons in Quebec established for a private interest, partnership or association in the Province of Quebec which at all times since February 24, 2013 have had no more than fifty persons bound to it by contact of employment or under its direction or control, who purchased Eligible eBooks during the Settlement Class Period except Excluded Persons, Persons who are in the National Settlement Class and Persons who validly Opt-Out of the Quebec Settlement Class in accordance with the Authorization judgment made in respect of Apple;

(65)   ***Released Claims*** mean any and all manner of claims, demands, actions, suits, causes of action, whether class, individual or otherwise in nature, whether personal or subrogated, for damages of any kind, including without limitation compensatory, punitive or other damages, liabilities of any nature whatsoever, including interest, costs, expenses, class administration expenses (including Administration Expenses), penalties, and lawyers' fees (including Class

Counsel Fees), known or unknown, suspected or unsuspected, foreseen or unforeseen, actual or contingent, and liquidated or unliquidated, in law, under statute or in equity, that the Releasors, or any of them, whether directly, indirectly, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, relating in any way to any conduct occurring anywhere, from the beginning of time to the end of the Settlement Class Period, in respect of the Alleged Conspiracy as it relates to the sales of Eligible eBooks in Canada during the Settlement Class Period which was alleged (or which could have been alleged) in the Canadian Proceedings including, without limitation, any such claims which have been asserted, would have been asserted, or could have been asserted, directly or indirectly, whether in Canada or elsewhere, as a result of or in connection with the Alleged Conspiracy or any other alleged unlawful  or any other horizontal or vertical, or unilateral or coordinated, anti-competitive conduct (whether that conduct occurred in Canada or elsewhere) in connection with the purchase, sale, pricing, discounting, marketing or distributing of Eligible eBooks during the Settlement Class Period, including, without limitation, any claims for consequential, subsequent or follow-on harm that arise after the Settlement Class Period in respect of any agreement or conduct that occurred during the Settlement Class Period, provided that sections 2 and 3 of the consent agreement entered into on January 19, 2017 between Apple and the Commissioner of the Competition were implemented. For greater certainty, nothing herein shall be construed to release any claims arising from (a) any alleged product defect, breach of contract, breach of warranty or similar claims between the Parties relating to Eligible eBooks, or (b) any claims relating to the sale of eBooks after the end of the Settlement Class Period in the event that sections 2 and 3 the consent agreement entered into on January 19, 2017 between Apple and the Commissioner of the Competition was not implemented.

(66)   ***Releasees*** mean, jointly and severally, individually and collectively, Apple and the Defendant Publishers and all of their respective present and former, direct and indirect, parents, subsidiaries, divisions, affiliates, partners, insurers, and

all other Persons, partnerships or corporations with whom any of the former have been, or are now, affiliated or otherwise related, and all of their respective past, present and future officers, directors, employees, agents, shareholders, members and managers, attorneys, trustees, servants and representatives (subject to such particular inclusions or exclusions of individuals as may be specified in writing by Apple in its sole discretion prior to the Effective Date), and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing;

(67)   ***Releasors*** mean, jointly and severally, individually and collectively, the Plaintiffs and the Settlement Class Members and their respective parents, subsidiaries, predecessors, successors, heirs, executors, administrators, insurers, and assigns;

(68)   ***Second National Proceeding*** means the proceeding commenced by Nancy Jean Adams in the form of a Statement of Claim issued in the Ontario Court (Windsor Registry), Court File No. CV-16-24156-CP, on September 22, 2016;

(69)   ***Settlement Amount*** means the total sum of CDN $12 million;

(70)   ***Settlement Approval Hearings*** means the hearings of the motions to be brought by the Ontario Plaintiff in the Ontario Court and the Quebec Plaintiff in the Quebec Court for the Approval Orders;

(71)   ***Settlement Classes*** mean the National Settlement Class and the Quebec Settlement Class;

(72)   ***Settlement Class Member(s)*** means, individually or collectively, any member or members of the National Settlement Class or the Quebec Settlement Class;

(73)   ***Settlement Class Period*** means the Original Class Period and the Additional Class Period;

(74)   ***Simon & Schuster*** means Simon & Schuster Canada, a division of CBS Canada Holdings Co.;

(75)    **Sony** means Sony of Canada Ltd. and any subsidiary or affiliate thereof that acted as a distribution agent for Defendant Publishers' eBooks in Canada;

(76)    **Third Party eRetailer(s)** means, individually or collectively, any eRetailer which does not choose to become a Cooperating eRetailer;

(77)    **Total Net Settlement Amount** means the Net Settlement Amount plus the Publishers' Net Settlement Amount;

(78)    **Trust Account** means an interest bearing trust account at a Canadian Schedule 1 bank or at Desjardins Group under the control of Class Counsel for the benefit of Settlement Class Members.

## SECTION 2 – SETTLEMENT APPROVAL

### 2.1    Best Efforts

(1)    The Parties shall use their best efforts to effectuate this Agreement, including securing the Certification and Authorization Orders, eRetailer Data Order, Approval Orders and Discontinuance Order in accordance with this Agreement.

### 2.2    Motions Certifying the National Proceeding, Authorizing the Quebec Proceeding, Approving Notice and Identification of Settlement Class Members

(1)    At a time mutually agreed to by the Plaintiffs and Apple after this Agreement is executed, and which is as soon as practicable, the Ontario Plaintiff and the Quebec Plaintiff shall each bring a motion or application before their respective Approval Courts for Certification and Authorization Orders and approving Notices.

(2)    The Certification and Authorization Orders shall be substantially in the forms set out in Schedule B to this Agreement.

## 2.3    Motion for eRetailer Data Order

(1)    At the same time that the motion or application is brought for Certification and Authorization Orders, Apple and Class Counsel will jointly seek, on notice to the eRetailers, the eRetailer Data Order from the Ontario Court, only.

(2)    The Parties will jointly propose that the eRetailers bear their own expenses and costs in connection with the eRetailer Data Order.  However, any expenses or costs ordered to be paid to the eRetailers in connection with the eRetailer Data Order will be paid by Class Counsel from the Settlement Amount on behalf of the Settlement Class Members.  For greater certainty and in any event, Apple shall have no liability or responsibility for any expenses or costs ordered to be paid to the eRetailers in connection with the eRetailer Data Order.

(3)    If the Ontario Court declines to make the eRetailer Data Order, Class Counsel are not required to appeal such decision.  However, Apple is permitted, but not required to appeal such decision.  If Apple does elect to appeal such decision, this settlement shall not be implemented further until such appeals are finally disposed.

## 2.4    Apple Data

(1)    Within forty-five (45) days after the Ontario Court makes or declines to make the eRetailer Data Order, Apple shall in any case provide the Apple Data to the Claims Administrator.

## 2.5    Cooperating eRetailers

(1)    Prior to or at the same time as Apple and Class Counsel bring a motion for the eRetailer Data Order, Apple and Class Counsel shall advise eRetailers of their ability to become a Cooperating eRetailer under this Agreement.

(2)    Within fifteen (15) days after the Ontario Court makes or declines to make the Third Party eRetailer Data Order, each eRetailer may advise whether it agrees to abide by the provisions of this Agreement relating to Cooperating eRetailers.

In the event that an eRetailer does not advise whether it agrees to abide by the provisions of this Agreement relating to Cooperating eRetailers within fifteen (15) days after the Ontario Court makes or declines to make the eRetailer Data Order, that eRetailer shall be deemed not to be a Cooperating eRetailer.

(3)     Within forty-five (45) days after the Ontario Court makes or declines to make the eRetailer Data Order, each Cooperating eRetailer shall provide the eRetailer Data to the Claims Administrator.

### 2.6     Motions for Approval of Settlement

(1)     Following receipt of the Certification and Authorization Orders and the eRetailer Data Order, if it is granted, and at a time mutually agreed to by the Plaintiffs and Apple which is as soon as practicable, the Ontario Plaintiff and the Quebec Plaintiff each shall bring a motion or application before their respective Approval Court for Approval Orders approving this Agreement, dismissing the National Proceeding and the Second National Proceeding and homologating the transaction in the Quebec Proceeding, respectively, as against Apple and the Defendant Publishers with prejudice and without costs.

(2)     The Approval Orders shall be substantially in the forms set out in Schedule A to this Agreement.

### 2.7     Discontinuance Order

(1)     Following receipt of the Certification and Authorization Orders and the expiration of the Opt-Out Period, the BC Plaintiffs shall bring an application at a time mutually agreed to by the BC Plaintiffs and Apple, before the BC Court seeking the Discontinuance Order.

(2)     The Discontinuance Order shall be substantially in the form set out in Schedule C to the Agreement.

## SECTION 3 – SETTLEMENT BENEFITS

### 3.1    Payment of Settlement Amount

(1)    Within forty-five (45) days of the execution of this Agreement by the Parties, Apple shall cause the Settlement Amount to be paid to Class Counsel to be held in the Trust Account in accordance with the terms of this Agreement.

(2)    The Plaintiffs have the right to terminate this Agreement if the Settlement Amount is not paid in full within sixty (60) days of the execution of this Agreement by the Parties.

(3)    Class Counsel shall maintain the Trust Account as provided for in this Agreement.  Class Counsel shall not pay out all or any part of the monies in the Trust Account, except in accordance with this Agreement or in accordance with an order of the Approval Courts, obtained with notice to Apple, after all appeal rights in respect of the Approval Orders have either lapsed or been exhausted.

(4)    If this Agreement is terminated under section 11, then Class Counsel shall forthwith return the Settlement Amount to Apple, together with interest earned on the Settlement Amount between the date it was paid by Apple and the date it is returned, less the costs of any Notice, any expenses or costs ordered to be paid to the eRetailers in connection with the eRetailer Data Order, and any translations as provided in section 11.3(1) that had been incurred to the date on which the Agreement is terminated.

### 3.2    Taxes and Interest

(1)    Except as hereinafter provided, all interest earned on the Settlement Amount shall accrue to the benefit of the Settlement Class Members and shall become and remain part of the Trust Account.

(2)    All taxes payable on any interest which accrues on the Settlement Amount in the Trust Account or otherwise in relation to the Settlement Amount shall be the responsibility of the Settlement Classes. Class Counsel shall be solely

responsible to fulfill all tax reporting and payment requirements arising from the Settlement Amount in the Trust Account, including any obligation to report taxable income and make tax payments.  All taxes (including interest and penalties) due with respect to the income earned on the Settlement Amount shall be paid from the Trust Account.

(3)     Apple shall have no responsibility to make any filings relating to the Trust Account and will have no responsibility to pay tax on any income earned by the Settlement Amount or pay any taxes on the monies in the Trust Account, except in the event the Agreement is terminated and the Settlement Amount is returned to Apple as provided in section 3.1(4), in which case Apple shall be solely responsible for all taxes payable on any interest which accrued thereon.

## SECTION 4 – DISTRIBUTION PROTOCOL

### 4.1    General

(1)     The mechanics of the administration and implementation of this Agreement and the Distribution Protocol shall be approved by the Approval Courts on a motion brought by Class Counsel on notice to Apple.

(2)     The Distribution Protocol will be based on and consistent with the principles set out in this Agreement and, in particular, section 4 of this Agreement, or as may be otherwise agreed upon by the Plaintiffs and Apple and approved by the Approval Courts.

(3)     After the Total Net Settlement Amount is paid by Class Counsel to the Claims Administrator and at the conclusion of the Claims Period, each Settlement Class Member shall be entitled to receive their Individual Monetary Benefit as hereinafter provided.

(4)     Subject to approval by the Approval Courts, the Individual Monetary Benefits:

(a)     for each Settlement Class Member who has an Active Account with iTunes, will be calculated based on the Apple Data and distributed by way

of the Credit Distribution to the Settlement Class Member's iTunes Active Account;

(b)    for each Settlement Class Member identified in the Apple Data who does not have an Active Account with iTunes, will be calculated based on the Apple Data and distributed by way of Direct Distribution;

(c)    for each Settlement Class Member who has an Active Account with a Cooperating eRetailer, will be calculated based on the eRetailer Data and distributed by way of the Credit Distribution to the Settlement Class Member's Cooperating eRetailer Active Account;

(d)    for each Settlement Class Member identified in  Cooperating eRetailer Data who does not have an Active Account with the Cooperating eRetailer, will be calculated based on the Cooperating eRetailer Data and distributed by way of Direct Distribution;

(e)    for all other Eligible eBook purchases by Settlement Class Members from Third Party eRetailers:

(A)    will be calculated based on the eRetailer Data provided by the Third Party eRetailers and distributed by way of Direct Distribution, if the eRetailer Data Order is made; or

(B)    will be calculated based on approved claims submitted through a claims process and distributed by way of the Alternate Distribution, if the eRetailer Data Order is not made.

(5)    After Apple has provided the Apple Data to the Claims Administrator, each Cooperating eRetailer has provided the eRetailer Data to the Claims Administrator, each Third Party eRetailer has provided the eRetailer Data to the Claims Administrator (if the eRetailer Data Order is made), and the Claims Period has expired (if the eRetailer Data Order is not made), the Claims Administrator shall determine the Individual Monetary Benefits payable to Settlement Class Members.

(6)     The Individual Monetary Benefit shall be increased proportionally, by excluding Settlement Class Members who elect to receive their benefit by cheque under the Alternate Distribution and who would receive less than CAD $20.00, so as to ensure optimal claims administration expediency and that insofar as possible the entirety of the Total Net Settlement Amount is paid out to Settlement Class Members.

## 4.2     Credit Distribution

(1)     Individual Monetary Benefits distributed by way of the Credit Distribution shall be dealt with in accordance with section 4.2.

(2)     After the Claims Administrator has determined the Individual Monetary Benefits payable to Settlement Class Members in respect of their iTunes or Cooperating eRetailers Active Accounts, the Claims Administrator shall pay to Apple and each Cooperating eRetailer an amount representing the total amount of Individual Monetary Benefits payable to Settlement Class Members who have an Active Account with iTunes or such Cooperating eRetailer, as the case may be.  At the same time, the Claims Administrator shall provide Apple and each Cooperating eRetailer a list setting out the amounts of the Individual Monetary Benefit payable to each Settlement Class Member who has an Active Account with iTunes or that Cooperating eRetailer, as the case may be.

(3)     Within thirty (30) days of the Claims Administrator providing the amount and the list described in section 4.2(2), Apple and each Cooperating eRetailer shall provide to each Settlement Class Member who has an Active Account with iTunes or the Cooperating eRetailer, as the case may be, a credit in the amount of that Settlement Class Member's Individual Monetary Benefit in his or her iTunes or Cooperating eRetailer Active Account automatically with no requirement on that Settlement Class Member to submit a claim.

(4)     Apple and the Cooperating eRetailers shall not charge any fees in connection with the deposit of such credits into a Settlement Class Member's iTunes or Cooperating eRetailer Active Account, as the case may be.

(5)     For greater certainty, there shall be no minimum amount of credit for a
        Settlement Class Member to be eligible for a deposit of such credits into a
        Settlement Class Member's iTunes or Cooperating eRetailer Active Account, as
        the case may be.

## 4.3     Direct Distribution

(1)     Individual Monetary Benefits distributed by way of the Direct Distribution shall
        be dealt with in accordance with section 4.3.

(2)     After the Claims Administrator has determined the Individual Monetary Benefits
        payable to Settlement Class Members by way of Direct Distribution in
        accordance with sections 4.1(4)(b), 4.1(4)(d) and 4.1(4)(e)(A), the Claims
        Administrator shall pay those Individual Monetary Benefits to each Settlement
        Class Member by electronic transfer to the e-mail address provided to the
        Claims Administrator pursuant to the  Apple Data or the eRetailer Data
        automatically with no requirement on that Settlement Class Member to submit a
        claim.

(3)     For greater certainty, there shall be no minimum amount of Individual Monetary
        Benefits for a Settlement Class Member to be eligible for an electronic transfer
        of said benefit to the Settlement Class Members' email address.

## 4.4     Alternate Distribution

(1)     Individual Monetary Benefits distributed by way of the Alternate Distribution
        shall be dealt with in accordance with section 4.4.

(2)     For greater certainty, the Alternate Distribution shall only be employed for the
        distribution of Individual Monetary Benefits to Settlement Class Members who
        file an approved claim for Eligible eBooks purchased from a Third Party
        eRetailer, and only in the event that the eRetailer Data Order is not made.

(3)     In the event that the eRetailer Data Order is not made, each Settlement Class
        Member may submit a claim form to the Claims Administrator in accordance

with section 4.1(4)(e)(B) before the end of the Claims Period in respect of Eligible eBooks purchased on a Third Party eRetailer account.

(4)     In the event that the eRetailer Data Order is not made, after the conclusion of the Claims Period, the Claims Administrator shall pay the Individual Monetary Benefits for each approved claim for Eligible eBooks purchased on a Third Party eRetailer account to each Settlement Class Member by electronic transfer to the e-mail address provided to the Claims Administrator or by cheque, should the Settlement Class Member so elect, to an address provided to the Claims Administrator.

(5)     Settlement Class Members who elect payment by cheque under the Alternate Distribution shall not be eligible for payment if their Individual Monetary Benefit is under CAD $20.

(6)     For greater certainty, there shall be no minimum amount of Individual Monetary Benefits for a Settlement Class Member to be eligible for an electronic transfer of said benefit to the Settlement Class Members' email address.

## 4.5     Remaining Total Net Settlement Amount

(1)     In the event that the entirety of the Total Net Settlement Amount is not paid to the Settlement Class Members in accordance with the Distribution Protocol, any remaining portion of the Total Net Settlement Amount shall be paid *cy pres* as the Parties agree and as the Approval Courts shall direct.

(2)     For greater certainty, in the event that the entirety of the Total Net Settlement Amount is not paid to the Settlement Class Members in accordance with the Distribution Protocol, there shall be no second or subsequent distribution of any remaining portion of the Total Net Settlement Amount to Settlement Class Members or any portion of the Settlement Class Members.

**4.6     No Responsibility for Administration or Fees**

(1)     Apple shall not have any responsibility, financial obligations or liability whatsoever with respect to the implementation, administration and oversight of the Distribution Protocol and/or the investment, distribution or administration of monies in the Trust Account including, but not limited to, Administration Expenses and Class Counsel Fees.  The totality of Apple's monetary contribution shall be limited to the Settlement Amount. For greater certainty, this section does not derogate from the requirement for Apple to provide the Apple Data in accordance with section 2.4 or to distribute the Individual Monetary Benefits to iTunes Active Accounts in accordance with section 4.2.

**SECTION 5 – OPTING-OUT**

**5.1     Procedure**

(1)     A Person may opt-out of the National Proceeding, the Second National Proceeding, or the Quebec Proceeding by sending a signed opt-out request form by pre-paid mail, courier or email to the Claims Administrator at an address and coordinates to be identified in the Notice of Certification, Authorization and Settlement Approval Hearing.

(2)     Opt-out requests must contain:

(a)     a statement requesting that the Person opting out be excluded from the relevant Settlement Class; and

(b)     the full name, current address, telephone number, and e-mail address of the Person who is opting out and any former names which are relevant to its purchase of eBooks in Canada during the Class Period.

(3)     An opt-out request of the National Proceeding shall be deemed to also be an opt-out request of the Second National Proceeding. An opt-out request of the Second National Proceeding shall be deemed to also be an opt-out request of the National Proceeding.

(4)     An opt-out request will only be effective if the executed opt-out request is postmarked or emailed on or before the end of the Opt-Out Period.

(5)     Opt-out request forms will be available on the websites of Class Counsel, and can also be obtained by mail or email by contacting Class Counsel, or as otherwise ordered by an Approval Court.

## 5.2     Opt-Out Report

(1)     Within twenty-one (21) days of the end of the Opt-Out Period, the Claims Administrator shall notify Class Counsel and Apple of: (i) each Person, if any, who has opted out of the Canadian Proceedings; and (ii) the percentage representing the total number of Eligible eBooks purchased during the Settlement Class Period by Persons who opt-out of the Canadian Proceedings divided by the total number of Eligible eBooks  purchased during the Settlement Class Period for (a) Settlement Class Members that are identified in the Apple Data, and (b) Settlement Class Members that are identified in the eRetailer Data, if available.

## SECTION 6 – RELEASES, DISMISSAL AND TRANSACTION HOMOLOGATION

## 6.1     Release of Releasees

(1)     Upon the Effective Date, and in consideration of payment of the Settlement Amount and for other valuable consideration set forth in this Agreement, the Releasors forever and absolutely release and forever discharge the Releasees from the Released Claims that any of them, whether directly, indirectly, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have.

## 6.2     No Further Claims

(1)     The Releasors shall not now or hereafter institute, continue, maintain, assert, participate in or be involved with, either directly or indirectly, whether in Canada or elsewhere, on their own behalf or on behalf of any class or any other Person,

any action, suit, cause of action, claim or demand against any Releasee or against any other Person who may claim contribution or indemnity, or other claims over for relief, from any Releasee in respect of any Released Claims.

## 6.3    Disposition of the Canadian Proceedings

(1)    Upon the Effective Date, the National Proceeding and the Second National Proceeding shall be dismissed and the Quebec Proceeding shall be settled by homologation of transaction, with prejudice and without costs as against Apple and where applicable, the Defendant Publishers.

(2)    Upon the Effective Date, the BC Proceeding shall be discontinued with prejudice and without costs as against Apple.

## 6.4    Claims Against Other Entities Reserved

(1)    Except as provided herein, this Agreement does not settle, compromise, release or limit in any way whatsoever any claim by Settlement Class Members against any Person other than the Releasees.

## SECTION 7 – EFFECT OF SETTLEMENT

## 7.1    No Admission of Liability

(1)    The Plaintiffs and Apple expressly reserve all of their rights if this Agreement is not approved, is terminated or otherwise fails to take effect for any reason. Further, whether or not this Agreement is finally approved, is terminated, or otherwise fails to take effect for any reason, this Agreement and anything contained herein, and any and all negotiations, Documents, discussions and proceedings associated with this Agreement, and any action taken to carry out this Agreement, shall not be deemed, construed or interpreted to be an admission of any violation of any statute or law, or of any wrongdoing or liability by Apple or by any Releasee, or of the truth of any of the claims or allegations contained in the Canadian Proceedings or any other pleading filed by the Plaintiffs or any other Person.

## 7.2    Agreement Not Evidence

(1)    Whether or not it is terminated, this Agreement and anything contained herein, and any and all negotiations, Documents, discussions and proceedings associated with this Agreement, and any action taken to carry out this Agreement, shall not be referred to, offered as evidence or received in evidence in any present, pending or future civil, criminal or administrative action or proceeding, except: (i) by the Parties in a proceeding to approve or enforce this Agreement; (ii) by a Releasee to defend against the assertion of any Released Claims; (iii) by a Releasee in any insurance-related proceeding; or (iv) as otherwise required by law or as provided in this Agreement.

## 7.3    No Further Litigation

(1)    No Class Counsel may hereafter institute, continue, maintain, assert, participate in or be involved with, either directly or indirectly, whether in Canada or elsewhere, on their own behalf or on behalf of any class or any other Person, any action, suit, cause of action, claim or demand against any Releasee or against any other Person who may claim contribution or indemnity, or other claims over for relief, from any Releasee which relates to or arises from the Alleged Conspiracy or Released Claims. For greater certainty, this section shall not affect the right of any Class Counsel to litigate any claims relating to the sale of eBooks after the end of the Settlement Class Period in the event that sections 2 and 3 the consent agreement entered into on January 19, 2017 between Apple and the Commissioner of the Competition were not implemented.

(2)    Section 7.3(1) of this Agreement shall be inoperative to the extent that it requires any lawyer who is a member of the Law Society of British Columbia (the "LSBC") to breach his or her obligations under Rule 4.7 of the LSBC's Professional Conduct Handbook by refraining from participation or involvement in any claim or action in a British Columbia court. This section shall not affect or render inoperative any other section or provision of this Agreement.

## SECTION 8 – CERTIFICATION OR AUTHORIZATION FOR SETTLEMENT ONLY

### 8.1    Settlement Classes and Common Issue

(1)    The Parties agree that the National Proceeding, the Second National Proceeding, and the Quebec Proceeding shall be certified or authorized solely for purposes of settlement of the Canadian Proceedings against Apple and the approval of this Agreement by the Approval Courts.

(2)    The Plaintiffs agree that, for settlement purposes, the only common issue that they will seek to define is the Common Issue and the only classes that they will assert are the National Settlement Class in both the National Proceeding and the Second National Proceeding and the Quebec Settlement Class in the Quebec Proceeding.  The Plaintiffs acknowledge that Apple agrees to the definition of the Common Issue for purposes of settlement only.

### 8.2    Certification and Authorization Without Prejudice

(1)    In the event that this Agreement is not finally approved, is terminated in accordance with its terms or otherwise fails to take effect, this Agreement shall, subject to an agreement by the Parties to the contrary, be null and void and of no force and effect and any order certifying or authorizing a class proceeding shall be set aside and the Parties agree that all Parties shall be put in the position they were in before this Agreement was executed and nothing in this Agreement shall prejudice any position that any of the Parties or any Releasee may take on any issue in the Canadian Proceedings or any other litigation.

## SECTION 9 – NOTICE TO NATIONAL SETTLEMENT CLASS

### 9.1    Notice Required

(1)    The proposed Settlement Classes shall be given the following Notices:
(i) Notice of Certification, Authorization and Settlement Approval Hearing;
(ii) Notice of Distribution; and (iii) any other notice that may be required by the Approval Courts or the BC Court.

(2)     All Notices will be provided to Apple for its approval as to form and content no less than thirty (30) days before any motion for approval to an Approval Court or the BC Court.

## 9.2     Dissemination of Notices

(1)     The Ontario Plaintiff and the Quebec Plaintiff shall, on a motion to their respective Approval Courts on notice to Apple, seek approval of the plan attached hereto as Schedule D for the dissemination of Notices in the form attached hereto as Schedule E.

(2)     The plan for dissemination of Notices shall include a provision that all required Notices under this Agreement shall be provided by direct e-mail notification to the e-mail address of each Settlement Class Member provided to the Claims Administrator pursuant to the eRetailers Data Order within thirty (30) days of the Order, if any, and/or by Apple pursuant to section 2.3(4) of this Agreement.

(3)     Subject to the approval of the Approval Courts, the plan for dissemination of Notices shall also include a provision that notice shall be provided by newspaper publications in English and French for: (i) Notice of Certification, Authorization and Settlement Approval Hearing; and (ii) Notice of Distribution, only in the event that the Alternate Distribution is required to be made.

(4)     Apple and Class Counsel shall agree on a mutually acceptable date to propose to the Court that the plan for disseminating the Notices be approved.

## SECTION 10 – CLASS COUNSEL FEES AND ADMINISTRATION EXPENSES

(1)     Except as provided in sections 10(2) and 11.3(1), the Releasees shall not be liable for any fees, disbursements or taxes arising in any way under this Agreement or the Canadian Proceedings including but not limited to Class Counsel Fees and Administration Expenses, and any costs, fees, disbursements or taxes of the Defendant Publishers, the Plaintiffs or any Settlement Class Members, including any expenses or costs incurred by any

lawyers, experts, advisors, agents, or representatives of the Settlement Class Members.

(2)    Class Counsel may on notice to Apple seek the Approval Courts' approval of Class Counsel Fees and Administration Expenses contemporaneous with seeking the Approval Orders, or at such other time as they shall determine in their sole discretion.

(3)    Except as provided in sections 10(2) and 11.3(1), any Administration Expenses and Class Counsel Fees may only be paid out of the Trust Account after the Effective Date.

(4)    The failure of an Approval Court to approve a request for Class Counsel Fees or Administration Expenses has no impact or effect on the rights and obligations of the Parties to this Agreement and shall not be grounds for termination of the Agreement.

## SECTION 11 – TERMINATION OF AGREEMENT

### 11.1   Right of Termination

(1)    The Plaintiffs or Apple may terminate this Agreement as it relates to it in the event that:

(a)    any Approval Court declines to grant a Certification Order or Authorization Order substantially in the form attached as Schedule B in the National Proceeding, the Second National Proceeding or the Quebec Proceeding or if any such Certification Order or Authorization Order is overturned or reversed in whole or in part on appeal;

(b)    any Approval Court declines to grant the Approval Orders substantially in the form of Schedule A or if any such Approval Order is overturned or reversed in whole or in part on appeal;

(c)     the Discontinuance Order in substantially the form of Schedule C obtained in accordance with this Agreement is not approved by the BC Court or is overturned or reversed in whole or in part on appeal; or

(d)     the total number of Eligible eBooks purchased by Persons who opt-out of a Canadian Proceeding exceeds 5% of total number of Eligible eBooks sold by the Defendant Publishers through Apple and the eRetailers.

(2)     In addition, as provided in section 3.1(2) of this Agreement, the Plaintiffs have the right to terminate this Agreement if the Settlement Amount is not paid in full within sixty (60) days of the execution of this Agreement by the Parties.

(3)     To exercise a right of termination under section 3.1(2) or section 11.1(1), a terminating party shall deliver a written notice of termination pursuant to section 12.16 of this Agreement within thirty (30) days of the ground for termination becoming known to the terminating party.  Upon delivery of such a written notice, this Agreement shall be terminated, shall be null and void and have no further force or effect, and shall not be binding on the Parties.

(4)     For greater certainty, this Agreement may not unilaterally be terminated if the Motion for eRetailer Data Order is not granted.

## 11.2   If Agreement is Terminated

(1)     If this Agreement is not approved, is terminated by the Plaintiffs or Apple in accordance with its terms or otherwise fails to take effect for any reason, all orders made in respect of this Agreement shall be set aside and shall be deemed as having no force and effect and shall be without prejudice to any position the Parties may assert in the future.

(2)     The Plaintiffs and Apple shall negotiate in good faith to determine a new timetable if the Canadian Proceedings are to continue.

**11.3   Allocation of Monies in the Trust Account Following Termination**

(1)   If this Agreement is terminated, Class Counsel shall return the Settlement Amount to Apple plus all accrued interest thereon, less the disbursements in respect of Notices, the expenses or costs ordered to be paid to the Third Party eRetailers in connection with the eRetailer Data Order, and translations incurred to the date of such payment, within thirty (30) days of receipt of a termination notice pursuant to section 11.1(3).

**11.4   Survival of Provisions After Termination**

(1)   If this Agreement is terminated or otherwise fails to take effect for any reason, the provisions of sections 3.1(4), 3.2(3), 7.1, 7.2, 8.2, 10(1), 10(2) and 11 and the definitions applicable thereto shall survive the termination and continue in full force and effect.  The definitions shall survive only for the limited purpose of the interpretation of these surviving sections within the meaning of this Agreement. All other provisions of this Agreement and all other obligations pursuant to this Agreement shall cease immediately.

**SECTION 12 – MISCELLANEOUS**

**12.1   Releasees Have No Liability for Administration**

(1)   The Releasees have no responsibility for and no liability whatsoever with respect to the administration of this Agreement or the Distribution Protocol. For greater certainty, this section does not derogate from the requirement for Apple to provide the Apple Data in accordance with section 2.4 or to distribute the Individual Monetary Benefits to iTunes Active Accounts in accordance with section 4.2.

**12.2   Motions for Directions**

(1)   Apple or the Plaintiffs may apply to the Approval Courts for directions in respect of the interpretation, implementation and administration of this Agreement.

(2)     Apple or the Plaintiffs may apply to the Approval Courts for directions in respect of any Distribution Protocol.

(3)     All motions contemplated by this Agreement shall be on notice to the Plaintiffs and Apple.

## 12.3   Headings, etc.

(1)     In this Agreement:

(a)     the division of the Agreement into sections and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Agreement; and

(b)     the terms "this Agreement", "hereof', "hereunder", "herein" and similar expressions refer to this Agreement and not to any particular section or other portion of this Agreement.

## 12.4   Computation of Time

(1)     In the computation of time in this Agreement, except where a contrary intention appears:

(a)     where there is a reference to a number of days between two events, the number of days shall be counted by excluding the day on which the first event happens and including the day on which the second event happens, including all calendar days; and

(b)     only in the case where the time for doing an act expires on a holiday, the act may be done on the next day that is not a holiday.

## 12.5   Ongoing Jurisdiction

(1)     The Approval Courts jointly shall retain exclusive jurisdiction over this Agreement and the Parties hereto (including the Settlement Class Members), Class Counsel Fees and Administration Expenses.

## 12.6   Governing Law

(1)     This Agreement shall be governed by and construed and interpreted in accordance with the laws of the Province of Ontario.

## 12.7   Entire Agreement

(1)     This Agreement constitutes the entire agreement among the Parties, and supersedes all prior and contemporaneous understandings, undertakings, negotiations, representations, promises, agreements, agreements in principle and memoranda of understanding in connection herewith.  None of the Parties will be bound by any prior obligations, conditions or representations with respect to the subject matter of this Agreement, unless expressly incorporated herein.

## 12.8   Amendments

(1)     This Agreement may not be modified or amended except in writing and on consent of all Parties hereto and the modifications or amendments shall only be effective if the Approval Courts approve any such material modification or amendment made after the Approval Orders have been granted.

## 12.9   Binding Effect

(1)     This Agreement shall be binding upon, and enure to the benefit of, the Plaintiffs, Apple, the Settlement Class Members, the Releasors, the Releasees, and all of their successors and assigns. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by the Plaintiffs shall be binding upon all Releasors and each and every covenant and agreement made herein by Apple shall be binding upon all of the Releasees.

## 12.10  Counterparts

(1)     This Agreement may be executed in counterparts, all of which taken together will be deemed to constitute one and the same agreement, and a facsimile or

PDF signature shall be deemed an original signature for purposes of executing this Agreement.

## 12.11  Interpretation

(1)  This Agreement has been the subject of negotiations and discussions among the Parties, each of which has been represented and advised by competent counsel, so that any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement shall have no force and effect.  The Parties further agree that the language contained in or not contained in previous drafts of this Agreement, or any agreement in principle, all have no bearing upon the proper interpretation of this Agreement.

## 12.12  Language

(1)  The Parties acknowledge that they have required and consented that this Agreement and all related documents be prepared in English; les parties reconnaissent avoir consenti à ce que la présente convention et tous les documents connexes soient rédigés en anglais.  Nevertheless, the Class Counsel shall prepare a French translation of this Agreement including the Schedules and may recoup the costs of translation from the Trust Account.  In the event of any dispute as to the interpretation or application of this Agreement, the English version shall prevail.

## 12.13  Transaction

(1)  This Agreement constitutes a transaction in accordance with Articles 2631 and following of the *Civil Code of Quebec*, and the parties are hereby renouncing to any errors of fact, of law and/or of calculation.

## 12.14  Recitals

(1)  The recitals to this Agreement are true and form part of the Agreement.

**12.15  Schedules**

(1)      The Schedules annexed hereto form part of this Agreement.

**12.16  Notice**

(1)      Any and all notices, requests, directives, or communications required by this Agreement shall be in writing and shall, unless otherwise expressly provided herein, be given personally, by express courier, by postage prepaid mail, by facsimile transmission, or by email PDF files, and shall be addressed as follows:

**FOR THE PLAINTIFFS AND FOR CLASS COUNSEL:**

Heather Rumble Peterson

STROSBERG SASSO SUTTS LLP

1561 Ouellette Avenue
Windsor, ON N8X 1K5
Tel: 519-561-6216
Fax: 519-258-9527
Email:
hpeterson@strosbergco.com

Eli Karp

MORGANTI & CO., P.C.

One Yonge St., Suite 1506
Toronto, ON M5E 1E5
Tel:647-344-1900
Fax: 416-352-7638
Email: ekarp@morgantilegal.com

Luciana Brasil

BRANCH MACMASTER LLP

1410 - 777 Hornby Street
Vancouver, BC V7G 3E2
Tel: 604-654-2966
Fax: 604-684-3429
Email: lbrasil@branmac.com

Normand Painchaud

SYLVESTRE PAINCHAUD ET ASSOCIÉS SENCRL

740 Avenue Atwater
Montreal, QC H4C 2G9
Tel: 514-937-2881 Ext. 228
Fax: 514-937-6529
Email: n.painchaud@spavocats.ca

**FOR APPLE:**

J. Thomas Curry
Paul-Erik Veel

LENCZNER SLAGHT

130 Adelaide Street W.
Suite 2600
Toronto, Ontario  M5H 3P5
Tel: (416) 865-3096
Fax: (416) 865-9010
Email: tcurry@litigate.com
pveel@litigate.com

## 12.17  Acknowledgements

(1)     Each of the Parties hereby affirms and acknowledges that:

    (a)     he, she or a representative of the Party with the authority to bind the Party with respect to the matters set forth herein has read and understood this Agreement;

    (b)     the terms of this Agreement and the effects thereof have been fully explained to him, her or the Party's representative by his, her or its counsel;

    (c)     he, she or the Party's representative fully understands each term of this Agreement and its effect; and

    (d)     no Party has relied upon any statement, representation or inducement (whether material, false, negligently made or otherwise) of any other Party, beyond the terms of this Agreement, with respect to the first Party's decision to execute this Agreement.

## 12.18  Authorized Signatures

(1)     Each of the undersigned represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of the Parties identified above their respective signatures below.

## 12.19  Date of Execution

(1)     The Parties have executed this Agreement as of the date on the cover page.

**WAYNE VAN TASSEL, NANCY JEAN ADAMS and ANTOINE PONTBRAND**, by their counsel

By: _____

    Strosberg Sasso Sutts LLP
    Title:   Counsel for the Ontario Plaintiff


By: _____

    Morganti & Co., P.C.
    Title:   Counsel for the Ontario Plaintiff


By: _____

    Branch MacMaster LLP
    Title:   Counsel for the BC Plaintiff


By: _____

    Sylvestre Painchaud et associés
    Title:  Counsel for the Quebec Plaintiff


**APPLE INC.**


_____

Per: Noreen Krall
VP, Chief Litigation Counsel, Apple Inc.
I have authority to bind the corporation.


**APPLE CANADA INC.**, by their counsel


_____

Lenczner Slaght Royce Smith Griffin LLP

**SCHEDULE A**

Schedule A

Draft ON and QC Orders Approving Agreement

Court File No. CV-12-17511

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**

The Honourable )                           , the          day

Justice Patterson )         of                     , 201

Between:

NANCY JEAN ADAMS

Plaintiff

and

APPLE INC., HACHETTE BOOK GROUP CANADA LTD.,
HACHETTE BOOK GROUP, INC., HARPERCOLLINS CANADA LIMITED,
HARPERCOLLINS PUBLISHERS, INC., MACMILLAN PUBLISHERS, INC.,
PENGUIN GROUP (USA) LLC (formerly, PENGUIN GROUP (USA), INC.), PENGUIN
CANADA BOOKS, INC., and,
SIMON & SCHUSTER CANADA, a division of CBS CANADA HOLDINGS CO.

Defendants

Court File No. CV-16-24156-CP

Between:

NANCY JEAN ADAMS

Plaintiff

and

{11005-001/00351582.2}

- 2 -

APPLE INC., APPLE CANADA, INC. HACHETTE BOOK GROUP
CANADA LTD., HACHETTE BOOK GROUP, INC., HARPERCOLLINS
CANADA LIMITED, HARPERCOLLINS PUBLISHERS, INC., MACMILLAN
PUBLISHERS, INC., PENGUIN GROUP (USA) LLC (formerly, PENGUIN
GROUP (USA), INC.), PENGUIN CANADA BOOKS, INC., and SIMON &
SCHUSTER CANADA, a division of CBS CANADA HOLDINGS CO.

Defendants

**Proceedings under the *Class Proceedings Act*, 1992**

---

**ORDER**
**(SETTLEMENT APPROVAL)**

---

THIS MOTION made by the Plaintiff, Nancy Jean Adams, for an order approving the Agreement made between the Plaintiff and others and Apple, dated ● (the "Agreement") to resolve the National Proceeding and the Second National Proceeding was heard on ● at ● Ontario.

ON READING the pleadings and materials filed in relation to this motion, including the Agreement between the Plaintiff and Apple (collectively, the "Settling Parties") and the <affidavits in support of approval motion>;

AND WHEREAS the deadline for opting out of the National Proceeding has passed and no National Settlement Class Member has validly opted out;

AND WHEREAS the deadline for opting out of the Second National Proceeding has passed and no National Settlement Class Member has validly opted out;

AND WHEREAS the deadline for objecting to the Agreement has passed, and there have been no written objections to the Agreement and no National Settlement Class Member appeared to object to the Agreement;

AND ON HEARING submissions of counsel for the Settling Parties;

- 3 -

AND ON BEING ADVISED that the Settling Parties consent to this Order;

AND ON BEING ADVISED that the Defendant Publishers consent to this Order;

1.      THIS COURT ORDERS AND DECLARES that, except to the extent they are modified by this Order, the definitions set out in the Agreement which is attached as Schedule "A" to this Order, apply to and are incorporated into this Order.

2.      THIS COURT ORDERS that, except where otherwise provided, the terms of this Order apply to both the National Proceeding and the Second National Proceeding.

3.      THIS COURT DECLARES that the Agreement is fair, reasonable and in the best interests of the National Settlement Class.

4.      THIS COURT ORDERS that the Agreement is hereby approved pursuant to section 29 of the *Class Proceedings Act, 1992* and shall be implemented and enforced in accordance with its terms and the terms of this Order.

5.      THIS COURT ORDERS AND DECLARES that the Agreement is incorporated by reference into and forms part of this Order.

6.      THIS COURT ORDERS that in the event of a conflict between this Order and the Agreement, this Order shall prevail.

7.      THIS COURT ORDERS AND DECLARES that this Order, including the Agreement, is binding upon each member of the National Settlement Class who has not validly opted out of the National Proceeding and the Second National Proceeding, including those persons who are minors or mentally incapable and the requirements of Rules 7.04(1) and 7.08(4) of the *Rules of Civil Procedure* are dispensed with in respect of the National Proceeding and the Second National Proceeding.

- 4 -

8.    THIS COURT ORDERS AND DECLARES that, upon the Effective Date, each Releasor has released and shall be conclusively deemed to have forever, finally and absolutely released the Releasees from the Released Claims.

9.    THIS COURT ORDERS that, each Releasor shall not now or hereafter institute, continue, maintain, assert, participate in or be involved with either directly or indirectly, whether in Canada or elsewhere, on their own behalf or on behalf of any class or any other Person, any action, suit, cause of action, claim or demand against any Releasee or against any other Person who may claim contribution or indemnity, or other claims over for relief, from any Releasee in respect of the Released Claims.

10.    THIS COURT ORDERS AND DECLARES that, upon the Effective Date, any member of the National Settlement Class who has not validly opted out shall be deemed to have consented to the dismissal without costs of any action or proceeding he, she or it has commenced in Canada or elsewhere, against any Releasee or against any other Person who may claim contribution or indemnity, or other claims over for relief, from any Releasee in respect of the Released Claims.

11.    THIS COURT ORDERS AND DECLARES that, upon the Effective Date, any action or proceeding brought in Ontario by any member of the National Settlement Class who has not validly opted out of the National Proceeding and the Second National Proceeding shall be dismissed without costs against any Releasee or against any other Person who may claim contribution or indemnity, or other claims over for relief, from any Releasee in respect of the Released Claims.

12.    THIS COURT ORDERS AND DECLARES that, for purposes of administration and enforcement of this Order and the Agreement, the Ontario Court will retain an ongoing supervisory role and the Settling Defendants acknowledge the jurisdiction of the Ontario Court and attorn to the jurisdiction of the Ontario Court solely for the purpose of implementing,

administering and enforcing the Agreement and this Order and subject to the terms and conditions set out in the Agreement and this Order.

13.     THIS COURT ORDERS AND DECLARES that, subject to the provisions of the Agreement, no Releasee shall have any responsibility or liability relating to the administration of the Agreement or the Distribution Protocol or the administration, investment, or distribution of the Trust Account.

14.     THIS COURT ORDERS AND DECLARES that, subject to the provisions of the Agreement, the Settlement Amount, plus accrued interest less any monies paid out pursuant to the Agreement, shall be held in trust for the benefit of the Settlement Classes, pending further order of the Approval Courts.

15.     THIS COURT ORDERS AND DECLARES that the terms of this Order shall not be effective unless and until the Agreement is approved by the Quebec Court and the BC Proceeding has been discontinued, and shall have no force and effect if such approval and discontinuance are not both obtained.

16.     THIS COURT ORDERS AND DECLARES that in the event that the Agreement is terminated by the Plaintiff or Apple in accordance with its terms or otherwise fails to take effect for any reason:

(a)     all orders made in respect of the Agreement, including this Order, shall be set aside as of the date made and shall be deemed as having no force and effect and shall be without prejudice to any position the Parties may assert in the future; and

(b)     each party to the National Proceeding and the Second National Proceeding shall be restored to their respective position in the National Proceeding and the Second National Proceeding as it existed immediately prior to the execution of the Agreement.

17.     THIS COURT ORDERS AND DECLARES that on notice to the Approval Courts, but without further order of the Approval Courts, the Settling Parties

may agree to reasonable extensions of time to carry out any of the provisions in the Agreement.

18.    THIS COURT ORDERS AND DECLARES that, except as aforesaid, upon the Effective Date, the National Proceeding and the Second National Proceeding be and are hereby dismissed without costs and with prejudice.


Date <>

_____

THE HONOURABLE JUSTICE PATTERSON

8235932

Schedule A

CANADA
PROVINCE OF QUÉBEC
DISTRICT OF MONTREAL

N°: 500-06-000595-120

SUPERIOR COURT
(Class Action)

ANTOINE PONTBRIAND
Plaintiff

vs.

APPLE INC.

Defendant

## JUDGMENT APPROVING A SETTLEMENT AGREEMENT

THIS JUDGMENT is made pursuant to a motion for the approval of a proposed settlement agreement (the "Agreement") between Plaintiff Antoine Pontbriand and others, and Defendants Apple Inc. and Apple Canada Inc. (collectively, Apple);

ON READING the motions and exhibits filed, including the Agreement between the Plaintiff and Apple;

AND WHEREAS no class member has asserted any contention or objection regarding the Agreement;

AND ON HEARING submissions of counsel for the Parties;

AND ON BEING ADVISED that the Parties consent to this Judgment, this Court:

1-    ORDERS AND DECLARES that, except to the extent they are modified by this Judgment, the definitions set out in the Agreement which is attached as Schedule "A" to this Judgment, apply to and are incorporated into this Judgment;

2-    ORDERS AND DECLARES that the Agreement is fair, reasonable and in the best interests of the Quebec Settlement Class.

3-    ORDERS AND DECLARES that the Agreement is hereby approved and shall be implemented and enforced in accordance with its terms and the terms of this Judgment;

- 2 -

4-    ORDERS that in the event of a conflict between this Judgment and the Agreement, this Judgment shall prevail;

5-    ORDERS that the Agreement is incorporated by reference into and forms part of this Judgment;

6-    ORDERS that, upon the Effective Date, any action or proceeding brought in Quebec by any member of the Quebec Settlement Class who has not validly opted out of the Quebec Proceeding shall be dismissed against the Releasees, without costs and with prejudice;

7-    ORDERS that this Judgment, including the Agreement, is binding upon each member of the Quebec Settlement Class who does not validly opt out of the Quebec Proceeding;

8-    ORDERS AND DECLARES that, upon the Effective Date, each Releasor has released and shall be conclusively deemed to have forever, finally and absolutely released the Releasees from the Released Claims;

9-    ORDERS that each Releasor shall not now or hereafter  institute, continue, maintain or assert, either directly or indirectly, whether in Quebec or elsewhere, on their own behalf or on behalf of any class or any other Person, any action, suit, cause of action, claim or demand against any Releasee or against any other Person who may claim contribution or indemnity, or other claims over for relief, from any Releasee in respect of the Released Claims;

10-   ORDERS AND DECLARES that, for purposes of administration and enforcement of this Judgement and the Agreement, the Quebec Court will retain an ongoing supervisory role and Apple acknowledges the jurisdiction of the Quebec Court and attorn to the jurisdiction of the Quebec Court solely for the purpose of implementing, administering and enforcing the Agreement and this Judgement subject to the terms and conditions set out in the Agreement and this Judgment;

11-   ORDERS that ♦ be and is appointed as the Claims Administrator;

12-   ORDERS AND DECLARES that no Releasee shall have any responsibility or liability relating to the administration of the Agreement or the Distribution Protocol or the administration, investment, or distribution of the Trust Account;

13-   ORDERS AND DECLARES that the terms of this Judgment shall not be effective unless and until the Agreement is approved by the Ontario Court, and shall have no force and effect if such approval is obtained;

14- ORDERS AND DECLARES that in the event that the Agreement is terminated by Plaintiff or Apple in accordance with its terms or otherwise fails to take effect for any reason:

    (a) all ORDERS made in respect of the Agreement, including this Judgment, shall be set aside as of the date made and shall be deemed as having no force and effect and shall be without prejudice to any position the Parties may assert in the future; and

    (b) each party to the Quebec Proceeding shall be restored to their respective position in the Quebec Proceeding as it existed immediately prior to the execution of the Agreement;

15- ORDERS AND DECLARES that if the Agreement is terminated, Class Counsel shall repay to Apple the Settlement Amount plus all accrued interest thereon, less the costs of Notices, expenses or costs ordered to be paid to the eRetailers in connection with the eRetailer Data Order, and any translation costs that had been incurred to the date on which the Agreement is terminated, the whole within thirty (30) days of receipt of a termination notice pursuant to section 11.1(3) of the Agreement;

16- ORDERS AND DECLARES that on notice to the Approval Courts, but without further Judgment of the Approval Courts, the Parties may agree to reasonable extensions of time to carry out any of the provisions in the Agreement;

17- ORDERS AND DECLARES that the levies of the *Fonds d'aide au recours collectif* shall be paid to it pursuant to the law;

18- ORDERS AND DECLARES that the Agreement is a transaction as per the Quebec civil Code, and that such transaction be and is hereby homologated;

19- APPROVES Class Counsel fees in the amount of ●% of the Settlement Amount plus disbursements an applicable taxes;

20- APPROVES Class Counsel disbursements in the amount of $● plus applicable taxes;

21- ORDERS that the Class Counsel fees, disbursements, and applicable taxes are to be paid from the Settlement Amount, payable pursuant to the terms of the Agreement; and

22- THE WHOLE without costs and with prejudice.

**SCHEDULE B**

Schedule B

Certification and Pre-Approval Notice Orders

Court File No. CV-12-17511

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**

The Honourable ) , the day

Justice Patterson ) of , 201

Between:

NANCY JEAN ADAMS

Plaintiff

and

APPLE INC., HACHETTE BOOK GROUP CANADA LTD.,
HACHETTE BOOK GROUP, INC., HARPERCOLLINS CANADA LIMITED,
HARPERCOLLINS PUBLISHERS, INC., MACMILLAN PUBLISHERS, INC.,
PENGUIN GROUP (USA) LLC (formerly, PENGUIN GROUP (USA), INC.), PENGUIN
CANADA BOOKS, INC., and,
SIMON & SCHUSTER CANADA, a division of CBS CANADA HOLDINGS CO.

Defendants

Court File No. CV-16-24156-CP

Between:

NANCY JEAN ADAMS

Plaintiff

and

- 2 -

APPLE INC., APPLE CANADA, INC. HACHETTE BOOK GROUP
CANADA LTD., HACHETTE BOOK GROUP, INC., HARPERCOLLINS
CANADA LIMITED, HARPERCOLLINS PUBLISHERS, INC., MACMILLAN
PUBLISHERS, INC., PENGUIN GROUP (USA) LLC (formerly, PENGUIN
GROUP (USA), INC.), PENGUIN CANADA BOOKS, INC., and SIMON &
SCHUSTER CANADA, a division of CBS CANADA HOLDINGS CO.

Defendants

**Proceedings under the *Class Proceedings Act*, 1992**

---

**ORDER**

**(CERTIFICATION AND PRE-APPROVAL NOTICE)**

---

THIS MOTION made by the Plaintiff, Nancy Jean Adams, for an order certifying the
National Proceeding as a class proceeding for settlement purposes only as against
Apple and certifying the Second National Proceeding as a class proceeding for
settlement purposes only as against Apple and for an order approving the form of
Notice of Certification and Settlement Approval Hearings (the "Pre-Approval Notice")
and the means by which the Pre-Approval Notice will be disseminated (the "Plan of
Dissemination"), was heard on ● at ● Ontario.

ON READING the pleadings and materials filed and on hearing the submissions of
counsel for the Plaintiff and for the Defendants;

AND ON BEING ADVISED THAT the Plaintiff has entered into an Agreement with Apple
(collectively, the "Settling Parties") dated ● (the "Agreement");

AND ON BEING ADVISED that the Settling Parties consent to this Order;

AND ON BEING ADVISED that the Defendant Publishers consent to this Order;

1.       THIS COURT ORDERS that, except to the extent that they are modified by this
         Order, the definitions set out in the Agreement, which is attached as **Schedule
         "A"** to this Order, apply to and are incorporated into this Order.

2.      THIS COURT ORDERS that the National Proceeding is certified as a class proceeding as against Apple for settlement purposes only.

3.      THIS COURT ORDERS that the Second National Proceeding is certified as a class proceeding as against Apple for settlement purposes only.

4.      THIS COURT ORDERS that, except where otherwise provided, the terms of this Order apply to both the National Proceeding and the Second National Proceeding.

5.      THIS COURT ORDERS that the National Settlement Class is defined as:

> All persons in Canada who purchased eBooks during the Settlement Class Period, except the Excluded Persons, Persons who are included in the Quebec Settlement Class, and Persons who validly opt-out of the National Settlement Class in accordance with this Order.

6.      THIS COURT ORDERS that Nancy Jean Adams is appointed as the representative plaintiff for the National Settlement Class.

7.      THIS COURT ORDERS that the following issue is common to the National Settlement Class:

> Did Apple and the Defendant Publishers, or any of them, conspire with each other or others to fix, maintain, increase or control the price of eBooks in Canada during the Settlement Class Period?

8.      THIS COURT ORDERS that ● be and is appointed as the Claims Administrator.

9.      THIS COURT ORDERS that any member of the National Settlement Class who wishes to opt-out of the National Proceeding and the Second National Proceeding must do so by sending a signed written election to opt-out, together with the information required in the Agreement, to the Claims Administrator, postmarked, couriered, faxed or emailed on or before the end of the Opt-Out Period.

- 4 -

10.     THIS COURT ORDERS AND DECLARES that an opt-out request received in relation to the National Proceeding shall be deemed to also be an opt-out request of the Second National Proceeding, and an opt-out request received in relation to the Second National Proceeding shall be deemed to also be an opt-out request of the National Proceeding.

11.     THIS COURT ORDERS that any member of the National Settlement Class who has validly opted-out of the National Proceeding and the Second National Proceeding is not bound by the Agreement and will not be entitled to receive any share of benefits payable in connection with same, and will cease to be a putative class member in the National Proceeding and the Second National Proceeding.

12.     THIS COURT ORDERS that any member of the National Settlement Class who has not validly opted-out of the National Proceeding and the Second National Proceeding is bound by the Agreement if it is approved by the Approval Courts and becomes effective in accordance with its' terms.

13.     THIS COURT ORDERS that the hearing to approve the Agreement in Ontario shall take place on ●.

14.     THIS COURT ORDERS that the Pre-Approval Notice is hereby approved substantially in the form attached hereto as **Schedule "B"**.

15.     THIS COURT ORDERS that the Plan of Dissemination is hereby approved in the form attached hereto as **Schedule "C"**.

16.     THIS COURT ORDERS that the Pre-Approval Notice shall be disseminated in accordance with the Plan of Dissemination.


Date: <>

- 5 -

_____

THE HONOURABLE JUSTICE
PATTERSON

LSRSG 8235935

Schedule B

Certification and Pre-Approval Notice Orders

| | |
|---|---|
| CANADA<br>PROVINCE OF QUÉBEC<br>DISTRICT OF MONTREAL | SUPERIOR COURT<br>(Class Action) |
| N°: 500-06-000595-120 | ANTOINE PONTBRIAND<br>Plaintiff<br><br>vs.<br><br>APPLE INC.<br>Defendant |

**JUDGMENT AUTHORIZING A CLASS ACTION IN THE CONTEXT OF A
SETTLEMENT AGREEMENT AND
APPROVING A NOTICE OF HEARING
ON APPROVAL OF A SETTLEMENT AGREEMENT**

THIS JUDGMENT is made pursuant to (i) the Amended Motion for the Authorization of a Class Action by Plaintiff Antoine Pontbriand dated May 28, 2012, and is filed in the context of a settlement agreement between Plaintiff and others and the Defendant Apple Inc. and, (ii) the Motion for the Approval of the Form of a Notice of Hearing on Approval of Settlement Agreement dated ● (the "**Pre-Approval Notice**") and the means by which the Pre-Approval Notice will be disseminated (the "**Plan of Dissemination**") as regards the proposed settlement agreement between Plaintiff and others and Apple Inc.;

ON READING the motions and exhibits filed and on hearing the submissions of counsel for the Plaintiff and for Apple Inc.;

AND ON BEING ADVISED that the Plaintiff has entered into a settlement agreement with Apple Inc. (collectively, the "**Settling Parties**") dated ● (the "**Agreement**");

AND ON BEING ADVISED that the Plaintiff asks this Court:

    a) to authorize this class action for the Quebec Settlement Class, as against Apple Inc., in the context of the Agreement;

    b) to appoint him as class representative in the context of the Agreement;

    c) to approve the opt-out procedure, the Pre-Approval Notice and the Plan of Dissemination;

    d) to order to publication of the Pre-Approval Notice in accordance with the Plan of Dissemination;

AND ON BEING ADVISED that the Settling Parties consent to this Judgment;

AND ON BEING ADVISED that a settlement agreement between the Plaintiff and others and the other Respondents, Hachette Book Group Canada Ltd., Hachette Book Group Inc., HarperCollins Canada Limited, HarperCollins Publishers, LLC, Macmillan Publishers, Inc., Penguin Group (USA), Inc., Penguin Canada Inc. c.o.b.a. Penguin Group (Canada), and Simon & Schuster Canada, a division of CBS Canada Holdings Co., was approved by this Court on November 4, 2014;

**FOR ALL OF THESE REASONS, THIS COURT:**

1-    GRANTS the Motion;

2-    ORDERS that, except to the extent that they are modified by this Judgment, the definitions set out in the Agreement, which is attached as **Exhibit R-1** to this Judgment, apply to and are incorporated into this Judgment;

3-    AUTHORIZES the Class Action as against Apple Inc. in the context of the Agreement, for the following Group:

      "All individuals resident in Quebec and all legal Persons in Quebec established for a private interest, partnership or association in the Province of Quebec which at all times since February 24, 2013 have had no more than fifty persons bound to it by contact of employment or under its direction or control, who purchased Eligible eBooks during the Settlement Class Period, except Excluded Persons and Persons who are in the National Settlement Class"

4-    APPOINTS Mr. Antoine Pontbriand as the representative for the Group in the context of the Agreement;

5-   IDENTIFIES the common issue, in the context of the Agreement, as follows:

"Did Apple Inc. and the Defendant Publishers, or any of them, conspire with each other or others to fix, maintain, increase or control the price of eBooks in Canada during the Settlement Class Period?"

6-   ORDERS that any member of the Quebec Settlement Class who wishes to opt-out of the Quebec Proceeding must do so by sending a signed written election to opt-out, together with the information required in the Agreement, to Quebec Class Counsel Sylvestre Painchaud, postmarked or faxed on or before the end of the Opt Out Period;

7-   ORDERS that any member of the Quebec Settlement Class who has validly opted-out of the Quebec Proceeding would not be bound by the Agreement and would not either be entitled to receive any share of benefits payable in connection with same;

8-   ORDERS that any member of the Quebec Settlement Class who has not validly opted-out of the Quebec Proceeding will be bound by the Agreement should it be approved;

9-   ORDERS that the hearing to approve the Agreement shall take place on <date>;

10-   ORDERS that the Pre-Approval Notice is hereby approved substantially in the form attached hereto as **Schedule "B"**;

11-   ORDERS that the Plan of Dissemination is hereby approved in the form attached hereto as **Schedule "C"**;

12-   ORDERS that the Pre-Approval Notice shall be disseminated in accordance with the Plan of Dissemination.

## SCHEDULE C

Schedule C

Discontinuance Order

No. S-122529
Vancouver Registry

## IN THE SUPREME COURT OF BRITISH COLUMBIA

BETWEEN:

WAYNE VAN TASSEL

PLAINTIFF

AND:

APPLE INC., HACHETTE BOOK GROUP CANADA LTD., HACHETTE BOOK GROUP, INC., HARPERCOLLINS CANADA LIMITED, HARPERCOLLINS PUBLISHERS, INC., MACMILLAN PUBLISHERS, INC., PENGUIN GROUP (USA) LLC (formerly PENGUIN GROUP (USA), INC.), PENGUIN CANADA BOOKS, INC. and SIMON & SCHUSTER CANADA, a division of CBS CANADA HOLDINGS CO.

DEFENDANTS

Proceedings pursuant to the *Class Proceedings Act*, RSBC 1996, c. 50

## ORDER
### (Discontinuance as Against Settling Defendants)

BEFORE   THE HONOURABLE <>          )          <DATE>
                                    )
                                    )

ON THE APPLICATION of the Plaintiff, Wayne Van Tassel, dated <date> coming on for hearing before me at 800 Smithe Street, Vancouver, British Columbia, on <date>, and UPON HEARING:

<counsel>

AND UPON READING the pleadings and materials filed in relation to this application, including <material> and on being advised that the Plaintiff has entered into an agreement with Apple Inc. dated ♦; and on being advised that the Plaintiff and Apple Inc. consent to this Order;

- 2 -

AND UPON BEING ADVISED that the Plaintiff has previously discontinued the action against all other named defendants; THIS COURT ORDERS that:

1.      The action is hereby discontinued without costs;

2.      The discontinuance of this action shall be with prejudice; and

3.      There shall be no costs of this action.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS NOTED ABOVE:

_____

Signature of lawyer for the Plaintiff

[LAWYER NAME]

_____


_____

Signature of lawyer for the Defendant, Apple Inc.

[LAWYER NAME]

_____


By the Court

_____

Registrar

Schedule C

Discontinuance Order

No. S-122529

Vancouver Registry

## IN THE SUPREME COURT OF BRITISH COLUMBIA

BETWEEN:

WAYNE VAN TASSEL

PLAINTIFF

AND:

APPLE INC., HACHETTE BOOK GROUP CANADA LTD.,HACHETTE BOOK GROUP, INC., HARPERCOLLINS CANADA LIMITED, HARPERCOLLINS PUBLISHERS, INC., MACMILLAN PUBLISHERS, INC., PENGUIN GROUP (USA) LLC (formerly PENGUIN GROUP (USA), INC.), PENGUIN CANADA BOOKS, INC. and SIMON & SCHUSTER CANADA, a division of CBS CANADA HOLDINGS CO.

DEFENDANTS

Proceedings pursuant to the *Class Proceedings Act*, RSBC 1996, c. 50

---

## ORDER

### (Discontinuance as Against Settling Defendants)

---

BRANCH MACMASTER LLP
Barristers & Solicitors
1410 – 777 Hornby Street
Vancouver, BC   V6Z 1S4

Tel: (604) 654-2999
Fax: (604) 684-3429
Email: lbrasil@branmac.com

8235936

# SCHEDULE D

SCHEDULE D

**PLAN OF DISSEMINATION**

**Notice of Certification/Authorization of class actions
and of Settlement Approval Hearing in the matter of
eBooks Class Actions Litigation ("Pre-Approval Notice")**

The Plaintiffs propose that the Pre-Approval Notice shall be distributed, in both English and French, in the following manner:

1. The Pre-Approval Notice will be emailed directly by the Claims Administrator to Settlement Class Members to the e-mail addresses provided to the Claims Administrator pursuant to the eRetailers Data Order and the Apple Data.

2. A news release and copies of the Pre-Approval Notice will be distributed to the Canadian News Wire for national reach distribution.

3. A link to the Pre-Approval Notice will be posted on dedicated Facebook pages which will be created for the purpose of providing information about the eBooks class actions in Canada.

4. An electronic version of the Pre-Approval Notice will be posted on a dedicated website which employs search engine optimization to raise its visibility to internet search engines.

5. The Pre-Approval Notice will be published (in the appropriate language) once in 1/3 page format in each of the Georgia Straight and Metro Newspapers across Canada (Halifax, Montreal, Ottawa, London, Toronto, Winnipeg, Regina, Saskatoon, Edmonton, Calgary and Vancouver).

6. The Pre-Approval Notice will be posted in electronic format on the websites of Class Counsel.

7.  The Pre-Approval Notice will be provided to the CBA National Class Action Registry with a request that it be posted online.

8.  The Pre-Approval Notice will be posted on the Quebec central registry of class actions.

9.  The Pre-Approval Notice will be sent to all persons who have contacted Class Counsel and identified themselves as being potential class members.

8250651

**SCHEDULE E**

# eBOOKS CLASS ACTIONS
## To all persons in Canada who purchased eBooks from April 1, 2010 to March 10, 2017

### Notice of Certification/Authorization and Proposed Canadian Settlement

**THE LAWSUITS**

Class action lawsuits were commenced in Ontario, British Columbia and Quebec ("Actions") against Apple Inc., Apple Canada Inc. (together, "Apple") and Hachette Book Group Canada Ltd, Hachette Book Group Inc., HarperCollins Canada Limited, HarperCollins Publishers LLC, Macmillan Publishers, Inc., Penguin Group (USA) LLC (formerly Penguin Group (USA), INC.), Penguin Canada Books, Inc. and Simon & Schuster Canada, a division of CBS Canada Holdings Co. (the "Publishers") alleging they conspired to fix, maintain, increase or control the price of eBooks sold by them in Canada, contrary to Part VI of the *Competition Act*, the common law and the Civil Code of Quebec (the "Alleged Conspiracy").  The Actions allege that, as a result of the Alleged Conspiracy, the price of eBooks sold in Canada from April 1, 2010 to March 10, 2017 was artificially high, and seek, among other things, reimbursement of the alleged overcharges. The defendants deny those allegations, and the claims have not been proven in Court.

**THE PUBLISHERS' SETTLEMENT**

A settlement agreement was reached with the Publishers in September 2014. That Settlement was approved by the Ontario and Quebec Courts (the "Courts") in November 2014. Its benefits included a payment of $3,175,000, the net amount of which has been kept in trust for the benefit of the Publishers' Settlement Class Memebrs.

**THE PROPOSED APPLE SETTLEMENT**

A settlement agreement was reached with Apple (the "Settlement").  Settlement benefits include payment of $12,000,000 (the "Settlement Proceeds") by Apple.  The Settlement must be approved by the Courts  to be effective.

**CERTIFICATION / AUTHORIZATION**

For the purposes of implementing the Settlement, the Actions were certified/authorized as class actions by the Courts. This means that the determinations made in the Actions will automatically apply to all persons who purchased eBooks in Canada between April 1, 2010 and March 10, 2017, unless they take steps to exclude themselves from the Actions (see below under "Your Options"). Certification/authorization will be set aside if the Settlement is not approved by the Courts.

**SETTLEMENT APPROVAL HEARINGS**

The requests to approve the Settlement will take place in hearings on &lt;date&gt; (Ontario) and &lt;date&gt; (Quebec). At the same time, the Class Lawyers may seek approval of their contingency agreements with the representative plaintiffs and of a fee percentage to be deducted from the Settlement Proceeds with other court-approved costs.

**THE SETTLEMENT AFFECTS YOUR RIGHTS**

If the Settlement is approved, it will affect all persons in Canada who purchased eBooks from April 1, 2010 to March 10, 2017 except those who opt out of the Actions, the Defendants and certain related parties ("Settlement Class Members"). Under the Settlement, Settlement Class Members **RELEASE** Apple and the Publishers from claims regarding the purchase of eBooks in Canada from April 1, 2010 to March 10, 2017, and commit to discontinue or dismiss other proceedings.

**INDIVIDUAL MONETARY BENEFIT**

Subject to approval by the Approval Courts, Individual Monetary Benefits for each Settlement Class Member, net of what is payable to eligible class action help funds, will be calculated based on data that will be provided by Apple and, as the case may be, by Third Party eRetailers. If information regarding Eligible eBook purchases is provided by Third Party eRetailers, the Individual Monetary Benefit will be either directly credited to members' active account(s) with Apple and/or Third Party eRetailers, or be distributed directly by way eTransfer to the members who do not have active accounts.

If information regarding Eligible eBook purchases is not provided by Third Party eRetailers, the Individual Monetary Benefit in respect of Eligible eBooks purchased from Third Party eRetailers will be calculated based on approved claims submitted through a claims process and distributed by way of eTransfer or cheque (with a minimum amount of 20$ for cheques to be emitted).

In the event that the entirety of the Total Net Settlement Amount is not paid to the Class Members in accordance with the Distribution Protocol to be approved by the Courts, the remaining portion, net of what is payable to eligible class action help funds, shall be paid to one or more not for profit organisation to be approved by the Courts.

**YOUR OPTIONS**

If you want to **participate in the Actions and benefit from this Settlement and  the Publishers' Settlement**, you **do not need to do anything**. All persons in Canada who purchased eBooks from April 1, 2010 to March 10, 2017 are **automatically included.**

If you **do not want to participate in the Settlements, you must exclude yourself** by completing and sending an Opt Out Form to the Claims Administrator by <date> (the "Opt-Out Deadline"). Opt Out Forms are available at <website> or from the Class Lawyers or Claims Administrator. If you opt out, you will keep any right to

bring your own lawsuit but will not receive the benefit of this Settlement or the Publishers' Settlement. If you do not opt out of the Actions by the Opt-Out Deadline, you will be bound by the Settlement if it is approved by the Courts and will not be able to opt out of the Actions in the future.

To **comment on or object** to the Settlement, you can write to one of the Class Lawyers**, or make your representations during the Settlement Aproval Hearings**. Written comments and objections will be provided to the Courts. The Courts cannot change the terms of the Settlement; they can only approve or not approve the Settlement.

**DO I NEED TO PAY ANYTHING?**

You do not need to pay anything out of your pocket. The plaintiffs and petitioners entered into contingency agreements with the Class Lawyers providing for payment of up to 1/3 of amounts recovered in the Actions and reimbursement of disbursements incurred to prosecute the Actions. The Courts will determine the amount to be paid to the Class Lawyers from the Settlement Proceeds.

**HOW DO I CONTACT THE CLASS LAWYERS?**

To ask questions about the Settlement or Actions, or register as an eBook purchaser, contact:

- For British Columbia residents: Luciana P. Brasil of  Branch MacMaster LLP care of uherlev@branmac.com
- For Quebec residents: Normand Painchaud of Sylvestre Painchaud SENCRL care of n.painchaud@spavocats.ca
- For all others: Heather Rumble Peterson of Strosberg Sasso Sutts LLP care of  ebooks@strosbergco.com

**This Notice is a summary. For more information about the Settlement or to read the settlement agreement, please visit <website> or contact the Class Lawyers.**

**CANADIAN EBOOK CLASS ACTION**
**AMENDING AGREEMENT TO THE NATIONAL SETTLEMENT AGREEMENT**


Made as of May 25, 2020


Between


**WAYNE VAN TASSEL, NANCY JEAN ADAMS and ANTOINE PONTBRIAND**

and

**Apple Inc and Apple Canada Inc**

**SECTION 1 – AMENDMENTS**

The undersigned hereby agree that the Canadian eBook Class Action National Settlement Agreement made as of November 14, 2018 between Wayne Van Tassel, Nancy Jean Adams and Antoine Pontbriand, on the one hand, and Apple Inc and Apple Canada Inc, on the other (the "Apple Settlement Agreement") shall be amended as follows:

(1)  The following provision shall be added as Recitals B-1, B-2, and B-3 respectively of the Apple Settlement Agreement:

B-1.   AND WHEREAS Penguin Group (USA) LLC (formerly Penguin Group (USA) Inc.) was merged into Penguin Random House LLC on December 31, 2014, with the surviving entity being Penguin Random House LLC;

B-2.   AND WHEREAS Penguin Canada Books Inc. amalgamated with Random House of Canada Limited on January 1, 2015 to become Penguin Random House Canada Limited;

B-3.   AND WHEREAS following the combinations, the agency agreements that Penguin Group (USA) LLC and Penguin Canada Books Inc. had with eBook retailers for the sale of eBooks in Canada were terminated and eBooks were distributed by the merged/amalgamated entities either under the terms that Penguin Random House Canada Limited made with eBook retailers or under the terms of agreements that Random House of Canada Limited had made with eBook retailers prior to the combinations;

(2)  Recital C of the Apple Settlement Agreement shall be deleted and replaced with the following:

C.      AND WHEREAS at the time the Plaintiffs entered into the Publishers' Settlement, the Plaintiffs understood that the Defendant Publishers (other than Penguin) had or were about to enter into consent agreements with the Commissioner of Competition and that, as a result of those agreements, eRetailers who sold Defendant Publishers' eBooks were permitted to independently offer discounts on the sales of eBooks;

(3)    Recital N of the Apple Settlement Agreement shall be deleted and replaced with the following:

N.      AND WHEREAS the Commissioner of Competition has also entered into similar consent agreements with the Defendant Publishers (other than Penguin) that have been registered with the Competition Tribunal;

(4)    Recital S of the Apple Settlement Agreement shall be deleted and replaced with the following:

S.      AND WHEREAS the Plaintiffs and Class Counsel have reviewed and fully understand the terms of this Agreement and, based on their analyses of the facts and law applicable to the Plaintiffs' claims, and having regard to the proposed disposition of the Canadian Proceedings against Apple and the Defendant Publishers, the value of the Settlement Amount, the consent agreements that have been entered into by Apple and the Defendant Publishers (other than Penguin), the risks associated with prosecuting the Canadian Proceedings, including the risks and uncertainties associated with trials and appeals, the Plaintiffs and Class Counsel have concluded that this Agreement is fair,

reasonable and in the best interests of the Plaintiffs and the Settlement Classes;

(5)     The definition of "eBook(s)" in section 1(31) of the Apple Settlement Agreement shall be deleted and replaced with the following:

> (31) ***eBook(s)*** means an electronically formatted book in digital format designed to be read on a computer, a handheld device, or other electronic devices capable of visually displaying an electronically formatted book in digital format. For greater certainty, the term eBook in this agreement refers to an individual copy of the above, rather than to a title.  For purposes of this Agreement, the term eBook does not include (1) an audio book, even if delivered and stored digitally; (2) a standalone specialized software application or "app" sold through an "app store" rather than through an eBook store (e.g., through Apple Inc.'s "App Store" rather than through "iBooks" or "iTunes") and not designed to be executed or read by or through a dedicated eBook reading device; or (3) a media file containing an electronically formatted book for which most of the value to consumers is derived from audio or video content contained in the file that is not included in the print version of the book;

(6)     The definition of "eBook Monetary Benefit" in section 1(32) of the Apple Settlement Agreement shall be deleted and replaced with the following:

> (32) ***eBook Monetary Benefit*** means the Total Net Settlement Amount, less any amount paid or to be paid *cy pres* pursuant to section 4.1(7) of this Agreement, divided by the number of Eligible eBooks (other than PRH Excluded eBooks);

(7)      The definition of "Eligible eBooks" in section 1(34) of the Apple Settlement Agreement shall be deleted and replaced with the following:

> (34) ***Eligible eBooks*** means each and every eBook published and/or distributed by one or more of the Defendant Publishers and/or their respective present and former, direct and indirect, parents, subsidiaries, divisions, and/or affiliates, that was purchased in Canada by a Settlement Class Member during the Settlement Class Period, except for eBooks published and/or distributed by Random House of Canada Limited and/or its present or former, direct or indirect, parents, subsidiaries, divisions and/or affiliates and purchased in Canada on or before December 31, 2014.  For the purposes of section 4 only of this Agreement, Eligible eBooks does not include PRH Excluded eBooks;

(8)      The definition of "eRetailer Data" in section 1(36) of the Apple Settlement Agreement shall be deleted and replaced with the following:

> (36) ***eRetailer Data*** means unique identifiers (which may but need not be Settlement Class Members' names) and e-mail addresses of Settlement Class Members who purchased Eligible eBooks (other than those who purchased only PRH Excluded eBooks) from the eRetailer during the Settlement Class Period, the total number of Eligible eBooks (other than PRH Excluded eBooks) purchased by each Settlement Class Member from the eRetailer during the Settlement Class Period, and information as to which of the Settlement Class Members has an Active Account with the eRetailer.  In the case of Sony, the eRetailer Data will also include information showing whether or not the Settlement Class

Members transferred their accounts to Kobo following the March 20, 2014 Sony Reader Store close-down;

(9)     The definition of "eRetailer Data Order" in section 1(37) of the Apple Settlement Agreement shall be deleted and replaced with the following:

(37) ***eRetailer Data Order*** means any or all of (i) the Order(s) of the Ontario Court requiring the eRetailers to provide the eRetailer Data to the Claims Administrator, (ii) binding agreement(s) by eRetailers to voluntarily provide the eRetailer Data to the Claims Administrator in the absence of Order(s) of the Ontario Court, or (iii) the voluntary provision of the eRetailer Data by eRetailers to the Claims Administrator in the absence of Order(s) of the Ontario Court or binding agreement(s) to provide such information;

(10)    The definition of "Individual Monetary Benefit" in section 1(42) of the Apple Settlement Agreement shall be deleted and replaced with the following:

(42) ***Individual Monetary Benefit*** means the pro rata share of the Total Net Settlement Amount to which each Settlement Class Member is entitled to under this Agreement, being an amount of money equaling the eBook Monetary Benefit multiplied by the number of Eligible eBooks (other than PRH Excluded eBooks) purchased by that Settlement Class Member during the Settlement Class Period, provided that the Individual Monetary Benefit may be increased proportionately as provided for in section 4.1(6) of this Agreement;

(11)    The definition of "Macmillan" in section 1(44) of the Apple Settlement Agreement shall be deleted and replaced with the following:

(44) ***Macmillan*** means Holtzbrinck Publishers, LLC d/b/a Macmillan and Macmillan Publishers, Inc.;

(12)    The definition of "National Settlement Class" in section 1(46) of the Apple Settlement Agreement shall be deleted and replaced with the following:

(46) ***National Settlement Class*** means all Persons in Canada who purchased Eligible eBooks during the Settlement Class Period, except the Excluded Persons, Persons who are included in the Quebec Settlement Class, Persons who validly opted out of the National Class Proceeding, and Persons who validly opt out of the Second National Proceeding;

(13)    The following provision shall be added as section 1(60-A) of the Apple Settlement Agreement:

(60-A)    ***PRH Excluded eBooks*** means all eBooks published or distributed by Penguin Random House Canada Limited and/or its present or former, direct or indirect, parents, subsidiaries, divisions and/or affiliates and purchased in Canada after December 31, 2014;

(14)    Section 2.4(1) of the Apple Settlement Agreement shall be deleted and replaced with the following:

(1) Within forty-five (45) days after the later of (i) the eRetailer Data Order being made in respect of all eRetailers or, if the eRetailer Data Order is not otherwise made, the Ontario Court declining to make the eRetailer Data Order, or (ii) the appointment of the Claims Administrator by the Approval Courts, Apple shall in any case provide the Apple Data to the Claims Administrator.

(15)    Section 2.5(3) of the Apple Settlement Agreement shall be deleted and replaced with the following:

> (3) Within forty-five (45) days after the latter of (i) the eRetailer Data Order being made in respect of all eRetailers or, if the eRetailer Data Order is not otherwise made, the Ontario Court declining to make the eRetailer Data Order, or (ii) the appointment of the Claims Administrator by the Approval Courts, each Cooperating eRetailer shall provide the eRetailer Data to the Claims Administrator.

(16)    Sections 4.4(2) through (4) of the Apple Settlement Agreement shall be deleted and replaced with the following:

> (2) For greater certainty, the Alternate Distribution shall only be employed for the distribution of Individual Monetary Benefits to Settlement Class Members who file an approved claim for Eligible eBooks purchased from a Third Party eRetailer, and only in the event that the eRetailer Data Order is not made with respect to such Third Party eRetailer.

> (3) In the event that the eRetailer Data Order is not made with respect to one or more Third Party eRetailers, each Settlement Class Member may submit a claim form to the Claims Administrator in accordance with section 4.1(4)(e)(B) before the end of the Claims Period in respect of Eligible eBooks purchased on such Third Party eRetailer accounts.

> (4) In the event that the eRetailer Data Order is not made with respect to one or more Third Party eRetailers, after the conclusion of the Claims Period, the Claims Administrator shall pay the Individual Monetary Benefits for each approved claim for Eligible eBooks purchased on such Third Party

eRetailer account to each Settlement Class Member by electronic transfer to the e-mail address provided to the Claims Administrator or by cheque, should the Settlement Class Member so elect, to an address provided to the Claims Administrator.

(17)   The following provision shall be added as section 4.1(7) of the Apple Settlement Agreement:

(7) Notwithstanding anything else in this Agreement, if agreed to by both the Plaintiffs and Apple, and subject to approval by the Approval Courts, in the event that the eRetailer Data Order is made with respect to some eRetailers but not others such that it is reasonably likely that compensation is payable in respect of at least 80% of Eligible eBooks by way of Credit Distribution and/or Direct Distribution, the Plaintiffs and Apple may agree to forego an Alternate Distribution entirely and instead have any portion of the Total Net Settlement Amount that would be payable or would reasonably be estimated to be payable pursuant to the Alternate Distribution paid *cy pres* as the Parties agree and as the Approval Courts shall direct.

(18)   Section 5.1(1) of the Apple Settlement Agreement shall be deleted and replaced with the following:

(1) A Person may opt-out of the Second National Proceeding by sending a signed opt-out request form by pre-paid mail, courier or email to the Claims Administrator at an address and coordinates to be identified in the Notice of Certification, Authorization and Settlement Approval Hearing.

(19)   Section 5.1(3) of the Apple Settlement Agreement shall be deleted.

(20)     Section 5.2(1) of the Apple Settlement Agreement shall be deleted and replaced with the following:

> (1) Within twenty-one (21) days of the end of the Opt-Out Period, the Claims Administrator shall notify Class Counsel and Apple of: (i) each Person, if any, who has opted out of the Second National Proceeding; and (ii) the percentage representing the total number of Eligible eBooks (other than PRH Excluded eBooks) purchased during the Settlement Class Period by Persons who opt-out of the Canadian Proceedings divided by the total number of Eligible eBooks (other than PRH Excluded eBooks) purchased during the Settlement Class Period for (a) Settlement Class Members that are identified in the Apple Data, and (b) Settlement Class Members that are identified in the eRetailer Data, if available.

(21)     The following provision shall be added as section 5.2(2) of the Apple Settlement Agreement:

> (2) Prior to the end of the Opt-Out Period, Class Counsel shall provide the information described in section 5.2(1) of the Publishers' Settlement to the Claims Administrator.

(22)     The following provision shall be added as section 9.2(5) of the Apple Settlement Agreement:

> (5) Subject to the approval of the Approval Courts, any notices required to be provided under this Agreement by direct e-mail notification to the e-mail addresses provided by Apple or pursuant to the eRetailer Data Order may be provided, at the election of Apple or the eRetailer who provided such information (as the case may be), by Apple or

the eRetailer directly instead of by the Claims Administrator, provided that: (i) Apple or the eRetailer (as the case may be) agrees to provide notice to all applicable Settlement Class Members in substantially the manner and form approved by the Approval Courts; and (ii) Apple or the eRetailer (as the case may be) provides confirmation satisfactory to Class Counsel, Apple, and the Claims Administrator that notice has in fact been provided to all applicable Settlement Class Members in substantially the manner and form approved by the Approval Courts.

(23)   The Parties shall work in good faith to prepare revised forms of Orders that were attached as Schedules to the Apple Settlement Agreement insofar as revisions are necessary so as to be consistent with this Amending Agreement.

(24)   This Amending Agreement constitutes an amendment pursuant to section 12.8(1) of the Apple Settlement Agreement.

(25)   Except as expressly provided herein, the terms of the Apple Settlement Agreement, including but not limited to the definitions and miscellaneous provisions set out therein, apply to this Amending Agreement.

(26)   The Parties have executed this Amending Agreement as of the date on the cover page.

**WAYNE VAN TASSEL, NANCY JEAN ADAMS and ANTOINE PONTBRIAND**, by their counsel

By: _____
Strosberg Sasso Sutts LLP
Title:   Counsel for the Ontario Plaintiff

By: _____
Morganti & Co., P.C.

Title:   Counsel for the Ontario Plaintiff

By:   _____

Branch MacMaster LLP
Title:   Counsel for the BC Plaintiff

By:   _____

Sylvestre Painchaud et associés
Title:  Counsel for the Quebec Plaintiff

**APPLE INC.**

_____
Per: Noreen Krall
VP, Chief Litigation Counsel, Apple Inc.
I have authority to bind the corporation.

**APPLE CANADA INC.**, by their counsel

_____
Lenczner Slaght Royce Smith Griffin LLP

Title:   Counsel for the Ontario Plaintiff

By: _____

Branch MacMaster LLP
Title:   Counsel for the BC Plaintiff

By: _____

Sylvestre Painchaud et associés
Title:  Counsel for the Quebec Plaintiff

**APPLE INC.**

_____

Per: Noreen Krall
VP, Chief Litigation Counsel, Apple Inc.
I have authority to bind the corporation.

**APPLE CANADA INC.**, by their counsel

_____

Lenczner Slaght Royce Smith Griffin LLP

Title:   Counsel for the Ontario Plaintiff

By:     _____

Branch MacMaster LLP
Title:   Counsel for the BC Plaintiff

By:     _____

Sylvestre Painchaud et associés
Title:  Counsel for the Quebec Plaintiff

**APPLE INC.**

_____

Per: Noreen Krall
VP, Chief Litigation Counsel, Apple Inc.
I have authority to bind the corporation.

**APPLE CANADA INC.**, by their counsel

_____

Lenczner Slaght Royce Smith Griffin LLP

Paul Erik Veel

# Exhibit "C"

*In re ELECTRONIC BOOKS ANTITRUST LITIGATION, Case No. 11-md-02293*
and
*Texas, et al. v. Penguin Group, et al, Case No. 12-cv-03394*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF APPLE SETTLEMENT AND DISTRIBUTION PLAN**

# EXHIBIT F

# DECLARATION OF DANIEL QUINN
# FOR APPLE INC.

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION** | ) ) ) | **No. 11-md-02293 (DLC)** **ECF Case** |
| **THE STATE OF TEXAS, et al.,** Plaintiffs, V. **PENGUIN GROUP (USA), INC., et al.,** Defendants. | ) ) ) ) ) ) ) | **Civil Action No. 12 cv 3394** |

## DECLARATION OF DANIEL QUINN
## REGARDING NOTICE PROVIDED BY APPLE INC. REGARDING
## PRELIMINARY APPROVAL OF THE APPLE SETTLEMENT

I, Daniel Quinn, declare the following:

1.  I am employed by Apple Inc. ("Apple") in iTunes Business Operations. Apple designs, manufactures and markets mobile communication and media devices, personal computers, and portable digital music players, and sells a variety of related software, services, peripherals, networking solutions, and third-party digital content and applications, including electronic books to consumers.

2.  I submit this affidavit in connection with *Texas v. Penguin Group (USA) Inc., et al.*, Case No. 12-cv-3394 and *In re: Electronic Books Antitrust Litigation*, Case No. 11-MD 2293 and at the request of Liaison Counsel for Plaintiff States and Class Counsel in these matters.

3.  This declaration is based on my personal knowledge and upon information provided by my associates and staff.

4.  Previously, at the request of Liaison Counsel for Plaintiff States and Class Counsel, my associates and I cooperated in a plan to notify certain Apple consumers of the settlements between publishers in this case and the Plaintiff States and Class Plaintiffs ("Publisher Settlements").

5.  I now understand that a settlement has been reached by the Plaintiff States and

Class Plaintiffs with Apple ("Apple Settlement").  I further understand that the Claims Administrator, Rust Consulting, Inc. and Kinsella Media ("Rust"), relied and used the data I previously supplied for the Publisher Settlements to notify Apple consumers of the Apple Settlement.

6. For the Publisher Settlements, as delineated by Liaison Counsel for Plaintiff States and Class Counsel, such notices were to be sent to consumers whose e-book purchases met certain criteria.  To assist in providing the requested notice to the appropriate consumers, my associates and I applied necessary screens and developed a list of customers with purchases meeting the following criteria:

   a. Individual consumers who had purchased eligible e-books from Apple between April 1, 2010 and May 21, 2012 if such e-books were published by any of following five publishers:   Hachette Book Group, Inc., HarperCollins Publishers LLC, Simon & Schuster, Inc., Penguin Group (USA) Inc. and Holtzbrinck Publishers, LLC, (known as Macmillan).

   b. Consumers in the United States, the District of Columbia and the U.S. territories of American Samoa, Guam, Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands were included. Consumers who were residents of countries other than the United States and its territories and commonwealths at the time of purchase were excluded.

   c. E-books that had not been purchased by the consumer (i.e., rental e-books or free books) were excluded.

7. I understand that the same criteria were to apply to the Apple Settlement.  Thus, to the best of my knowledge and belief, Apple provided the contact information for each customer on the list noted in Paragraph 6 to Rust who was responsible for sending the actual notices.

8. If the Apple Settlement is given final approval by this Court, we intend to cooperate with Liaison Counsel for Plaintiff States and Class Counsel in a similar manner as described above to provide notice of the actual account credit available for use by all consumers to whom were sent these emails.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 20, 2014.


DANIEL P. QUINN

# Exhibit "D"

*In re ELECTRONIC BOOKS ANTITRUST LITIGATION, Case No. 11-md-02293*
*and*
*Texas, et al. v. Penguin Group, et al, Case No. 12-cv-03394*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**FINAL APPROVAL OF APPLE SETTLEMENT AND DISTRIBUTION PLAN**

# EXHIBIT D

# DECLARATION OF CHARLES S. WRIGHT
# FOR AMAZON.COM, INC.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | ) ) ) | No. 11-md-02293 (DLC) ECF Case |

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 12 cv 3394 |
| v. | ) ) | |
| PENGUIN GROUP (USA), INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF CHARLES S. WRIGHT
### REGARDING NOTICE OF PRELIMINARY APPROVAL OF THE APPLE SETTLEMENT PROVIDED BY AMAZON.COM

Charles S. Wright states the following:

1. I am Senior Corporate Counsel for Amazon.com, Inc. ("Amazon"), a retailer that sells that sells electronic e-books to consumers, among other goods and services.

2. I submit this affidavit in connection with *Texas v. Penguin Group (USA) Inc., et al.,*, Case No. 12-cv-3394 and *In re: Electronic Books Antitrust Litigation*, Case No. 11-MD 2293 and at the request of Liaison Counsel for Plaintiff States and Class Counsel in these matters.

3. This declaration is based on my personal knowledge and upon information provided by other employees of Amazon who assisted with this project under my direction.

4. At the request of Liaison Counsel for Plaintiff States and Class Counsel, Amazon developed and executed a plan to notify certain consumers of Amazon of a Settlement reached by State Attorneys General and Class Plaintiffs with Apple Inc. ("Apple").

5.  As delineated by Liaison Counsel for Plaintiff States and Class Counsel, such notices were to be sent to consumers whose e-book purchases met certain criteria. To provide the requested notice to the appropriate consumers, Amazon applied necessary screens and developed a list of customers with purchases meeting the following criteria:

    a.  Individual consumers who had purchased eligible e-books from Amazon between April 1, 2010 and May 21, 2012 if such e-books were published by any of following five publishers: Hachette Book Group, Inc., HarperCollins Publishers LLC, Simon & Schuster, Inc., Penguin Group (USA) Inc. and Holtzbrinck Publishers, LLC, (known as Macmillan).

    b.  Consumers in the United States, the District of Columbia and the U.S. territories of American Samoa, Guam, Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands were included. Consumers who were residents of countries other than the United States and its territories and commonwealths at the time of purchase were excluded.

    c.  E-books that had not been purchased by the consumer (i.e., rental e-books or free books) were excluded.

6.  This process resulted in a list of eligible, unique customer email addresses.

7.  Amazon prepared an introduction email to its customers to accompany the official, court-approved email notices. The language of the introductory message was reviewed and approved by Counsel for Plaintiff States and Class Counsel and was intended to provide consumers more assurance of the validity of the notice. Both the text of the introduction emails and the official notices are attached as Attachment 1.

8.  On September 10, 2014, Amazon sent out emails, which tracked the language in Attachment 1, to all eligible, unique customer email addresses we had earlier identified. Of these, 25 emails were undeliverable.

9.  If the pending settlement is given final approval by this Court, Amazon can automatically credit the accounts of all customers to whom we sent the original email notices and will send an additional notice of the actual account credit available for use by all consumers to whom we sent these emails.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 29, 2014.

_____

Charles S. Wright

Subject: Important Legal Notice Relating to eBooks Settlement

Dear Kindle Customer,

We previously emailed you about Settlements between several eBook publishers, State Attorneys General and private plaintiffs. On March 25, 2014, Amazon made credits from the proceeds of those publishers' Settlements available to eligible customers. You can learn more about those publishers' Settlements by clicking here.

The Attorneys General and private plaintiffs have now settled similar claims against Apple Inc. The court where those claims are pending has directed us to send the following legal notice to you to advise you of your rights in the Apple Settlement. If you have any questions about this notice, or your legal rights, please visit the E-book Lawsuits website or call the phone number listed at the end of this notice. Amazon's customer service will not be able to answer questions about your legal rights in the Apple Settlement.

Thanks for being a Kindle customer.

*Settlement ID Number:*

### Legal Notice

## Benefits from E-books Settlement with Apple

### *Para una notificación en Español, llamar o visitar nuestro website.*

Records indicate that you are eligible for a payment from a Settlement reached by State Attorneys General and Class Plaintiffs with Apple Inc. ("Apple"). The Apple Settlement resolves Plaintiffs' claims for money damages against Apple in antitrust lawsuits about the price of electronic books ("E-books"). Amazon has not been sued in these cases. It is providing this notice as a service to its customers.

### What the Apple Settlement Provides

The Apple Settlement provides for three possible outcomes, depending on the decision of an appeal of the District Court's July 10, 2013 finding that Apple violated the antitrust laws ("Liability Finding"). First, if the Court's Liability Finding is upheld, Apple will pay $400 million to Eligible Consumers. Second, if the Liability Finding is sent back to the District Court for further consideration of whether Apple violated the antitrust laws, Apple will pay $50 million to Eligible Consumers. Third, if the Liability Finding is reversed, Apple will make no payments.

If Apple is required to pay Eligible Consumers under either of the first two options and if the Court approves the Apple Settlement, you will receive an automatic credit to your customer account. The credit can be used for the purchase of products or services sold by Amazon. The amount of your payment, if any, will be determined based on the qualifying E-book purchases identified by Amazon in your customer account.

### How to Receive your Benefit

If Apple is required to make a payment to Eligible Consumers, you do not need to do anything to receive your credit unless you change your email address. (If you do change your email address, you should update your Amazon profile or visit www.EbookLawsuits.com and click on the "Update Your Contact Information" link.) Because you are pre-qualified, your credit will be applied to your account by Amazon automatically, and you will receive another email letting you know when it's available. If you bought E-books from more than one retailer, you may receive other notices with different instructions on how to receive a payment.

If Apple is required to make a payment to Eligible Consumers, you also will have the option to receive a check instead of your credit. You can request a check by calling 1-866-686-9333, or going to the Apple Settlement website listed below, and clicking on the Check Request Option link on or before October 31, 2014. Be sure to reference the Settlement ID number found at the top of this email. Customers who received a check from the earlier E-books settlements do not have to re-submit a check request for the Apple Settlement. However, if your mailing address changes before you receive your check, please visit www.EbookLawsuits.com and click on the "Update Your Contact Information" link to update your mailing address.

### Your Other Rights

You can choose to exclude yourself from the Apple Settlement and keep your right to sue Apple on your own. If you exclude yourself, you can't receive any benefits from the Apple Settlement. Your written Exclusion Form must be postmarked by October 31, 2014.

If you don't exclude yourself, you can submit objections about the Apple Settlement. Your written objections must be postmarked by October 31, 2014.

## Attachment 1

Please visit the Apple Settlement website below for detailed information on how to submit a valid Exclusion Form or objection.

The Court will hold a hearing on **November 21, 2014, at 2:00 p.m.** to consider whether to approve the Apple Settlement. You or your own lawyer may ask to appear and speak at the hearing. The hearing may be moved to a different date or time without additional notice, so please check the website below for additional information.

### For more detailed information:
### Call 1-866-686-9333 or Visit www.EbookLawsuits.com

Attachment 1

# Exhibit "E"

*In re ELECTRONIC BOOKS ANTITRUST LITIGATION, Case No. 11-md-02293*
*and*
*Texas, et al. v. Penguin Group, et al, Case No. 12-cv-03394*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**FINAL APPROVAL OF APPLE SETTLEMENT AND DISTRIBUTION PLAN**

# EXHIBIT G

# DECLARATION OF KYOSUKE MUROTA FOR RAUTEN KOBO INC. (FORMERLY KOBO INC.)

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | ) ) ) | No. 11-md-02293 (DLC) ECF Case |
| THE STATE OF TEXAS, et al., Plaintiffs, V. PENGUIN GROUP (USA), INC., et al., Defendants. | ) ) ) ) ) ) ) ) | Civil Action No. 12 cv 3394 |

## DECLARATION OF KYOSUKE MUROTA
## REGARDING NOTICE OF PRELIMINARY APPROVAL OF THE APPLE
## SETTLEMENT PROVIDED BY RAKUTEN KOBO INC.

Kyosuke Murota, states the following:

1. I am <u>Chief Financial Officer</u> for <u>Rakuten Kobo Inc. (formerly Kobo Inc.)</u>, a retailer that sells electronic e-books to consumers.

2. I submit this affidavit in connection with *Texas v. Penguin Group (USA) Inc., et al.,*, Case No. 12-cv-3394 and *In re: Electronic Books Antitrust Litigation*, Case No. 11-MD 2293 and at the request of Liaison Counsel for Plaintiff States and Class Counsel in this matter.

3. This declaration is based on my personal knowledge and upon information provided by my associates and staff.

4. At the request of Liaison Counsel for Plaintiff States and Class Counsel, my associates and I developed and executed a plan to notify certain Rakuten Kobo Inc. consumers of a Settlement reached by State Attorneys General and Class Plaintiffs with Apple Inc. ("Apple").

5. As delineated by Liaison Counsel for Plaintiff States and Class Counsel, such notices were to be sent to consumers whose e-book purchases met certain criteria. To provide the requested notice to the appropriate consumers, my associates and I applied necessary screens and developed a list of customers with purchases meeting

the following criteria:

    a.  Individual consumers who had purchased e-books from Rakuten Kobo Inc. between April 1, 2010 and May 21, 2012 if such e-books were published by any of following five publishers: Hachette Book Group, Inc., HarperCollins Publishers LLC, Simon & Schuster, Inc., Penguin Group (USA) Inc. and Holtzbrinck Publishers, LLC, (known as Macmillan).

    b.  Consumers in the United States, the District of Columbia and the U.S. territories of American Samoa, Guam, Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands were included. Consumers who were residents of countries other than the United States and its territories and commonwealths at the time of purchase were excluded.

    c.  E-books that had not been purchased by the consumer (i.e., rental e-books or free books) were excluded.

6.  This process resulted in a list of eligible, unique customer email addresses.

7.  My associates and I prepared an introduction email to Rakuten Kobo Inc. customers to accompany the official, court-approved email notice. The language of the introductory message was reviewed and approved by Counsel for Plaintiff States and Class Counsel and was intended to provide consumers more assurance of the validity of the notice. The text of the introduction email and the official notice is attached as Attachment 1.

8.  On September 11, 2014, Rakuten Kobo Inc. sent out emails, which tracked the language in Attachment 1, to all eligible, unique customer email addresses we had earlier identified. Of these, 30,611 emails were undeliverable.

9.  If the pending settlement is given final approval by this Court, we intend to send notice of the actual account credit available for use by each consumer to whom we sent these emails.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 28, 2014.

Kyosuke Murota
Chief Financial Officer
Rakuten Kobo Inc.

**Micah Bonte-Gelok**

| | |
|---|---|
| **From:** | Kobo <news@shop.kobo.com> |
| **Sent:** | Thursday, September 04, 2014 10:36 AM |
| **To:** | Vivian WS Li |
| **Subject:** | Proof Launch: (HTML-only) 091114_312_AGApple_US_V8: Important message about your eBook purchases |



## Dear Kobo customer,

This email is to inform you of a Settlement reached by State Attorneys General and Class Plaintiffs with Apple Inc. ("Apple") regarding eBook pricing.

Generally, you are included as an Eligible Consumer in the Settlement if you purchased an eBook from April 1, 2010 to May 21, 2012 published by specific publishers from the Kobo bookstore. Kobo is not involved in the Settlement but is providing this notice to their customers as a service.

As a Kobo customer we will send you follow up service emails if Apple is required to make a payment.

For complete details on the lawsuit, please read the legal notice below or visit the Apple E-book Lawsuits website at www.EbookLawsuits.com.

Thank you for being a Kobo customer.

The Kobo Team


Your Notice ID Number: KB5489247674


## Benefits from E-books Settlement with Apple
*Para una notificación en Español, llamar o visitar nuestro website.*

Records indicate that you may be eligible for a payment from a Settlement reached by State Attorneys General and Class Plaintiffs with Apple Inc. ("Apple"). The Apple Settlement resolves Plaintiffs' claims for money damages against Apple in antitrust lawsuits about the price of electronic books ("E-books"). Kobo has not been sued in these cases. It is providing this notice as a service to its customers.

## What the Apple Settlement Provides

The Apple Settlement provides for three possible outcomes, depending on the decision of an appeal of the Court's July 10, 2013 finding that Apple violated the antitrust laws ("Liability Finding"). First, if the Court's Liability Finding is upheld, Apple will pay $400 million to Eligible Consumers. Second, if the Liability Finding is sent back to the District Court for further consideration of whether Apple violated the antitrust laws, Apple will pay $50 million to Eligible Consumers. Third, if the Liability Finding is reversed, Apple will make no payments.

If Apple is required to pay Eligible Consumers under either of the first two options and if the Court approves the Apple Settlement, you will receive an automatic credit to your customer account. The amount of your payment, if any, will be determined based on the qualifying E-book purchases identified by Kobo in your E-reader account.

## How to Receive your Benefit

If Apple is required to make a payment to Eligible Consumers, you do not need to do anything at this time to receive your credit unless you change your email address. (If you do change your email address, you should update your Kobo profile or visit www.EbookLawsuits.com and click on the "Update Your Contact Information" link.) If the Court approves the Apple Settlement, you will receive another email letting you know how to activate your credit. Once you activate the credit, it will be applied to your account by Kobo. If you bought E-books from more than one retailer, you may receive other notices with different instructions on how to receive a payment.

If Apple is required to make a payment to Eligible Consumers, you also have the option to receive a check instead of your credit. You can request a check by calling 1-866-686-9333, or going to the Apple Settlement website listed below, and clicking on the Check Request Option link on or before October 31, 2014. Be sure to reference the Settlement ID number found at the top of this email. Customers who received a check from the earlier E-books settlements do not have to re-submit a check request for the Apple Settlement. However, if your mailing address changes before you receive your check, please visit www.EbookLawsuits.com and click on the "Update Your Contact Information" link to update your mailing address.

## Your Other Rights

You can choose to exclude yourself from the Apple Settlement and keep your right to sue Apple on your own. If you exclude yourself, you can't receive any benefits from the Apple Settlement. Your written Exclusion Form must be postmarked by October 31, 2014.

If you don't exclude yourself, you can submit objections about the Apple Settlement. Your written objections must be postmarked by October 31, 2014.

Please visit the Apple Settlement website below for detailed information on how to submit a valid Exclusion Form or objection.

The Court will hold a hearing on November 21, 2014, at 2:00 p.m. to consider whether to approve the Settlement. You or your own lawyer may ask to appear and speak at the hearing. The hearing may be moved to a different date or time without additional notice, so please check the website below for additional information.

### For more detailed information:
### Call 1-866-686-9333 or Visit www.EbookLawsuits.com

2

# Exhibit "F"

*In re ELECTRONIC BOOKS ANTITRUST LITIGATION, Case No. 11-md-02293*
**and**
*Texas, et al. v. Penguin Group, et al, Case No. 12-cv-03394*


**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF APPLE SETTLEMENT AND DISTRIBUTION PLAN**


# EXHIBIT I

# DECLARATION OF STELLA LOH
# FOR GOOGLE INC.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | ) ) ) | No. 11-md-02293 (DLC) ECF Case |
| THE STATE OF TEXAS, et al., Plaintiffs, V. PENGUIN GROUP (USA), INC., et al., Defendants. | ) ) ) ) ) ) ) ) ) | Civil Action No. 12 cv 3394 |

## DECLARATION OF STELLA LOH
### REGARDING NOTICE OF PRELIMINARY APPROVAL OF THE APPLE SETTLEMENT PROVIDED BY GOOGLE INC.

Stella Loh states the following:

1. I am a Books Product Manager of Google, a retailer that sells various Internet-related products and services, and that sells electronic e-books to consumers.

2. I submit this affidavit in connection with *Texas v. Penguin Group (USA) Inc., et al.,* Case No. 12-cv-3394 and *In re: Electronic Books Antitrust Litigation*, Case No. 11-MD 2293 and at the request of Liaison Counsel for Plaintiff States and Class Counsel in this matter.

3. This declaration is based on my personal knowledge and upon information provided by my associates and staff.

4. At the request of Liaison Counsel for Plaintiff States and Class Counsel, my associates and I developed and executed a plan to notify certain Google consumers of a Settlement reached by State Attorneys General and Class Plaintiffs with Apple Inc. ("Apple").

5. As delineated by Liaison Counsel for Plaintiff States and Class Counsel, such notices were to be sent to consumers whose e-book purchases met certain criteria. To provide the requested notice to the appropriate consumers, my associates and I applied necessary screens and developed a list of customers with purchases meeting the following criteria:

    a.  Individual consumers who had purchased e-books from Google between April 1, 2010 and May 21, 2012 if such e-books were published by any of following five publishers: Hachette Book Group, Inc., HarperCollins Publishers LLC, Simon & Schuster, Inc., Penguin Group (USA) Inc. and Holtzbrinck Publishers, LLC, (known as Macmillan).

    b.  Consumers in the United States, the District of Columbia and the U.S. territories of American Samoa, Guam, Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands were included. Consumers who were residents of countries other than the United States and its territories and commonwealths at the time of purchase were excluded.

    c.  E-books that had not been purchased by the consumer (i.e., rental e-books or free books) were excluded.

6. This process resulted in a list of eligible, unique customer email addresses.

7. My associates and I prepared an introduction email to Google customers to accompany the official, court-approved email notice. The language of the introductory message was reviewed and approved by Counsel for Plaintiff States and Class Counsel and was intended to provide consumers more assurance of the validity of the notice. The text of the introduction email and the official notice is attached as Attachment 1.

8. On September 10, 2014, Google sent out emails, which tracked the language in Attachment 1, to all eligible, unique customer email addresses we had earlier identified. Of these, 8520 emails were undeliverable.

9. If the pending settlement is given final approval by this Court, we intend to send notice of final approval to all consumers who have filed a claim in the Settlement. This notice will indicate that each eligible consumer will receive a Settlement check from the Apple E-books Settlement.


I declare under penalty of perjury that the foregoing is true and correct. Executed on 10/9/2014.


Stella Loh

# Attachment 1

From: Books on Google Play <googleplay-noreply@google.com>
Date: Wed, Sep 10, 2014 at 10:58 AM
Subject: Google Play: Important Notice About Apple E-Book Lawsuits
To: stellaloh@google.com



Dear Google Play / Google Books customer,

We are sending you this legal notice to inform you that you may be eligible for a payment from a Settlement reached by State Attorneys General and Class Plaintiffs with Apple Inc. about the price of electronic books. **Google has not been sued in this case. We are providing this notice as a service to our valued customers for your past E-book purchases from Google Play.**

You DO NOT need to file another Claim Form for the Apple Settlement if you filed a Claim Form and received a check with the previously approved Settlements between State Attorneys General, Class Plaintiffs and settling publishers Hachette, HarperCollins, Simon & Schuster, Macmillan and Penguin. If you filed a prior claim and need to change your mailing address, you should call 1-866-686-9333 or visit www.EbookLawsuits.com and click on the "Update Your Contact Information" link.

If you did not file a Claim Form for the previously approved Settlements and wish to participate in the Apple Ebook Settlement you should file a Claim Form now. Please follow the instructions below on how to file a claim form on the Settlement Website by **October 31, 2014.**

As always, we appreciate your business and thank you for being a valued customer of Google Play / Google Books.

Sincerely,
The Books on Google Play Team

---------------------

Settlement ID Number: GGXXXXXXXXXXXXXXXXX

## Benefits from E-book Settlement with Apple

*Para una notificación en Español, llamar o visitar nuestro website.*

Records indicate that you may be eligible for a payment from a Settlement reached by State Attorneys General and Class Plaintiffs with E-book Apple Inc. ("Apple"). The Apple Settlement resolves Plaintiffs' claims for money damages against Apple in antitrust lawsuits about the price of electronic books ("E-books"). Google has not been sued in this case. It is providing this notice as a service to its customers.

<u>What the Apple Settlement Provides</u>

The Apple Settlement provides for three possible outcomes, depending on the decision of an appeal of the Court's July 10, 2013 finding that Apple violated the antitrust laws ("Liability Finding"). First, if the Court's Liability Finding is upheld, Apple will pay $400 million to Eligible Consumers. Second, if the Liability Finding is sent back to the District Court for further consideration of whether Apple violated the

antitrust laws, Apple will pay $50 million to Eligible Consumers. Third, if the Liability Finding is reversed, Apple will make no payments.

If Apple is required to pay Eligible Consumers under either of the first two options and if the Court approves the Apple Settlement, you will receive a check. The amount of your payment, if any, will be determined based on the qualifying E-book purchases identified by Google in your E-reader account.

### How to Receive your Benefit

If you filed a Claim Form with the previously-approved Settlements between State Attorneys General, Class Plaintiffs and settling publishers Hachette, HarperCollins, Simon & Schuster, Macmillan and Penguin, you do not need to file another Claim Form for the Apple Settlement. If you filed a claim and need to change your mailing address, you should call 1-866-686-9333 or visit www.EbookLawsuits.com and click on the "Update Your Contact Information" link.

If you did not file a Claim Form in the Prior Settlements, you will need to submit a Claim Form with your name, address, and the Settlement ID Number above in order to receive a payment from the Apple Settlement, if any payments are made. You can file a Claim Form either online or by mail. Further information on how to file a Claim Form is available at the Apple Settlement Website at www.EbookLawsuits.com. Claim Forms must be filed online or postmarked by October 31, 2014. If you bought E-books from more than one retailer, you may receive other notices with different instructions on how to receive a payment.

### Your Other Rights

You can choose to exclude yourself from the Apple Settlement and keep your right to sue Apple on your own. If you exclude yourself, you can't receive any benefits from the Apple Settlement. Your written Exclusion Form must be postmarked by October 31, 2014.

If you don't exclude yourself, you can submit objections about the Apple Settlement. Your written objections must be postmarked by October 31, 2014.

Visit the Apple Settlement website below for detailed information on how to submit a valid Exclusion Form or objection.

The Court will hold a hearing on November 21, 2014, at 2:00 p.m. to consider whether to approve the Apple Settlements. You or your own lawyer may ask to appear and speak at the hearing. The hearing may be moved to a different date or time without additional notice, so please check the website below for additional information.

## For more detailed information:
## Call 1-866-686-9333 or Visit www.EbookLawsuits.com

© 2014 Google Inc. 1600 Amphitheatre Parkway, Mountain View, CA 94043

You have received this mandatory service announcement email to update you about important notifications to your Google Play / Google Books account.